1
REBECCA J. WINTHROP (SBN 116386)
NORTON ROSE FULBRIGHT US LLP
2
555 South Flower Street, Forty-First Floor
Los Angeles, California 90071
3
Telephone: (213) 892-9200
Facsimile: (213) 892-9494
4
rebecca.winthrop@nortonrosefulbright.com

5
RYAN E. MANNS (*pro hac vice*)
JASON I. BLANCHARD (*pro hac vice forthcoming*)
6
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 3600
7
Dallas, Texas 75201
Telephone: (214) 855-8000
8
Facsimile: (214) 855-8200
ryan.manns@nortonrosefulbright.com
9
jason.blanchard@nortonrosefulbright.com

10
*Attorneys for Roman Catholic Welfare Corporation of*
*Oakland, Roman Catholic Cemeteries of the Diocese*
11
*of Oakland, and Adventus*

12

13
**UNITED STATES BANKRUPTCY COURT**

14
**NORTHERN DISTRICT OF CALIFORNIA**

15
**OAKLAND DIVISION**

| | |
|---|---|
| 16   In re: | Case No. 23-40523 WJL |
| 17   THE ROMAN CATHOLIC BISHOP OF OAKLAND, a California corporation sole, | Chapter 11 |
| 18           Debtor. | |
| 19 | |
| 20   THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE ROMAN CATHOLIC BISHOP OF OAKLAND | Adv. Pro. No. 24-04053 WJL |
| 21 | **MOTION OF THE ROMAN CATHOLIC WELFARE CORPORATION OF OAKLAND, THE ROMAN CATHOLIC CEMETERIES OF THE DIOCESE OF OAKLAND AND ADVENTUS TO DISMISS COMPLAINT** |
| 22           Plaintiff, | |
| 23   v. | |
| 24   THE ROMAN CATHOLIC BISHOP OF OAKLAND, ADVENTUS, THE ROMAN CATHOLIC WELFARE CORPORATION OF OAKLAND, AND THE ROMAN CATHOLIC CEMETERIES OF THE DIOCESE OF OAKLAND, | Date: March 5, 2025<br>Time: 10:30 a.m.<br>Judge: Hon. William J. Lafferty, III<br>Place: United States Bankruptcy Court<br>Courtroom 220<br>1300 Clay Street<br>Oakland, CA 94612 |
| 25 | |
| 26 | |
| 27 | |
| 28           Defendants. | |

Document Prepared
on Recycled Paper

2963815176

TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE ROMAN
CATHOLIC BISHOP OF OAKLAND:

   **PLEASE TAKE NOTICE** that The Roman Catholic Welfare Corporation of Oakland, The Roman Catholic Cemeteries of the Diocese of Oakland, and Adventus (collectively, the "Non-Debtor Defendants"), defendants in the above-captioned adversary proceeding, hereby move this Court (the "Motion"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rules"), as incorporated by Rule 7012 of the Federal Rules of Bankruptcy Procedure, to dismiss the *Adversary Complaint for Declaratory Relief* (the "Complaint") filed against the Non-Debtor Defendants by the Official Committee of Unsecured Creditors of the Roman Catholic Bishop of Oakland (the "Committee"), on the grounds that the Complaint fails to state a claim upon which relief may be granted.

   The Motion is based on the attached *Memorandum of Points and Authorities*, the *Declaration of Ryan E. Manns in Support of Motion to Dismiss* (the "Manns Declaration") and the *Notice of Hearing on the Motion of the Roman Catholic Welfare Corporation of Oakland, the Roman Catholic Cemeteries of the Diocese of Oakland and Adventus to Dismiss Complaint*, both of which are filed concurrently herewith, the records and files in this adversary proceeding and all related proceedings, and such other and further matters as this Court may consider at or before any hearing on this Motion.

Dated: January 24, 2024

REBECCA J. WINTHROP
RYAN E. MANNS (*pro hac vice*)
JASON I. BLANCHARD (*pro hac vice forthcoming*)
NORTON ROSE FULBRIGHT US LLP


By: */s/ Rebecca J. Winthrop*
   REBECCA J. WINTHROP
   *Attorneys for Roman Catholic Welfare*
   *Corporation of Oakland, Roman Catholic*
   *Cemeteries of the Diocese of Oakland, and*
   *Adventus*

**TABLE OF CONTENTS**

Page

I. PRELIMINARY STATEMENT ............................................................................1

II. FACTUAL BACKGROUND ...........................................................................2

   A.  The Non-Debtor Defendants ...................................................................2

       *1.  The Roman Catholic Welfare Corporation of Oakland* .......................2

       *2.  The Roman Catholic Cemeteries of the Diocese of Oakland* ................4

       *3.  Adventus* ..............................................................................................4

   B.  The Relationship Between the Debtor and the Non-Debtor Defendants .........5

       *1.  The Roman Catholic Diocese of Oakland* ...........................................5

       *2.  Directors and Officers of the Debtor and Non-Debtor Defendants* .......5

       *3.  The 2007 Bond Issuance* .....................................................................6

       *4.  The 2017 PNC Bank Debt* ...................................................................7

       *5.  The Debtor's Loan with the Roman Catholic Cemeteries of the Diocese of Oakland* ......................................................................................8

       *6.  Other Alleged Connections Between the Debtor and the Non-Debtor Defendants* ..........................................................................................9

III. LEGAL STANDARD ...................................................................................9

IV. ARGUMENT .............................................................................................10

   A.  The Court Should Dismiss the Committee's Claim for Substantive Consolidation (Count 2) ...................................................................11

       *1.  As Non-Profit Entities, the Non-Debtor Defendants May Not be Involuntarily Thrust into Bankruptcy Through Substantive Consolidation* ......................................................................................11

       *2.  The Committee Has Failed to Adequately Plead a Claim for Substantive Consolidation* .................................................................14

   B.  The Court Should Dismiss the Committee's Claim for a Determination that the Non-Debtor Defendants' Property is Property of the Debtor's Bankruptcy Estate (Count 1) .........................................................................20

V. CONCLUSION ...........................................................................................21

Document Prepared
on Recycled Paper

Case: 24-04053   Doc# 9   Filed: 01/24/25   Entered: 01/24/25 19:56:36   Page 3 of 28

**Page(s)**

**Cases**

*In re Archdiocese of St. Paul & Minnesota*,
    553 B.R. 693 (Bankr. D. Minn. 2016).........................................................................12, 19

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).......................................................................................................9

*In re Augie/Restivo Baking Co.*,
    860 F.2d 515 (2d Cir. 1988)..................................................................................14, 15, 16

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).......................................................................................................9

*In re Bonham*,
    229 F.3d 750 (9th Cir. 2000).....................................................................11, 12, 14, 15, 16

*Brown v. Viegelahn (In re Brown)*,
    960 F.3d 711 (5th Cir. 2020)........................................................................................13

*Butler v. Candlewood Rd. Partners, LLC (In re Raymond)*,
    529 B.R. 455 (Bankr. D. Mass. 2015).........................................................................21

*Butner v. U.S.*,
    440 U.S. 48 (1979).......................................................................................................21

*Clark's Crystal Springs Ranch, LLC v. Gugino (In re Clark)*,
    548 B.R. 246 (B.A.P. 9th Cir. 2016)............................................................................15

*Coto Settlement v. Eisenberg*,
    593 F.3d 1031 (9th Cir. 2010)......................................................................................10

*Daniels-Hall v. National Educ. Ass'n*,
    629 F.3d 992 (9th Cir. 2010)........................................................................................10

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008)........................................................................................9

*In re Giller*,
    962 F.2d 796 (8th Cir. 1992)........................................................................................12

*Harrington v. Purdue Pharma L.P.*,
    603 U.S. 204 (2024).....................................................................................................13

*In re Howland*,
    674 F. App'x 482 (6th Cir. 2017)........................................................................11, 17, 19

*In re Jackson*,
    548 B.R. 353 (Bankr. N.D. Ga. 2016)..........................................................................21

DOCUMENT PREPARED
ON RECYCLED PAPER

2963815176

*Khoja v. Orexigen Therapeutics, Inc.*,
　898 F.3d 988 (9th Cir. 2018) ..................................................................................... 10

*Kismet Acquisition, LLC v. Icenhower (In re Icenhower)*,
　757 F.3d 1044 (9th Cir. 2014) ................................................................................... 11

*Law v. Siegel*,
　571 U.S. 415, 134 S. Ct. 1188 (2014) ................................................................ 12, 14

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
　519 F.3d 1025 (9th Cir. 2008) ........................................................... 9, 12, 14, 19

*McHenry v. Renne*,
　84 F.3d 1172 (9th Cir. 1996) .................................................................................... 20

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
　521 F.3d 1097 (9th Cir. 2008) .................................................................................... 9

*Morse Operations, Inc. v. Robins LE-COCQ, Inc. (In re Lease-A-Fleet, Inc.)*,
　141 B.R. 869 (Bankr. E.D. Pa. 1992) ...................................................................... 16

*Official Comm. of Unsecured Creditors v. Archdiocese of St. Paul & Minneapolis*,
　562 B.R. 755 (D. Minn. 2016) .................................................................................. 13

*Official Comm. of Unsecured Creditors v. Archdiocese of St. Paul & Minneapolis*
　*(In re Archdiocese of St. Paul & Minneapolis)*,
　888 F.3d 944 (8th Cir. 2018) ................................................................... 1, 12, 14

*In re Owens Corning*,
　419 F.3d 195 (3d Cir. 2005) ........................................................... 11, 14, 15, 17

*Pattern Design LLC v. We Are Sechey Inc.*,
　2024 WL 4369668 (N.D. Cal. Oct. 1, 2024) ........................................................... 21

*R2 Investments, LDC v. World Access, Inc. (In re World Access, Inc.)*,
　301 B.R. 217 (Bankr. N.D. Ill. 2003) ...................................................................... 16

*In re Republic Airways Holding Inc.*,
　565 B.R. 710 (Bankr. S.D.N.Y. 2017) ...................................................................... 17

*Sprewell v. Golden State Warriors*,
　266 F.3d 979 (9th Cir. 2001) ...................................................................................... 9

*In re Stayton SW Assisted Living, LLC*,
　2009 WL 5173512 (D. Or. Dec. 22, 2009) ............................................................. 15

*Stokes v. Duncan (In re Stokes)*,
　2013 WL 5313412 (B.A.P. 9th Cir. Sept. 23, 2013) .............................................. 20

*Swartz v. KPMG LLP*,
　476 F.3d 756 (9th Cir. 2007) (per curiam) ............................................................. 10

*United States v. Mackenzie (In re Leite)*,
　112 F.4th 1246 (9th Cir. 2024) ................................................................................. 13

DOCUMENT PREPARED
ON RECYCLED PAPER

2963815176

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) ................................................................. 10

*In re Verestar, Inc.*,
  343 B.R. 444 (Bankr. S.D.N.Y. 2006) .................................................... 18

*Warfield v. Solomon Global, LLC (In re Solomon)*,
  2022 WL 18715959 (Bankr. D. Ariz. Aug. 31, 2022) ............................. 15

**Rules and Statutes**

11 U.S.C. § 105(a) ............................................................... 1, 11, 12, 13, 14

11 U.S.C. § 303(a) ................................................................. 1, 12, 13, 14

11 U.S.C. § 541 .............................................................................. 2, 20, 21

11 U.S.C. § 541(a)(2) ............................................................................... 21

11 U.S.C. § 542 ....................................................................................... 21

Cal. Corp. Code § 9132 ........................................................................... 18

Cal. Corp. Code § 9240 ........................................................................... 18

Fed. R. Bankr. P. 7001(9) ........................................................................ 21

Fed. R. Civ. P. 8 ...................................................................................... 20

Fed. R. Civ. P. 12(b)(6) ....................................................................... 9, 21

**Other Authorities**

https://www.irs.gov/charities-non-profits/does-the-organizing-document-contain-
  the-dissolution-provision-required-under-section-501c3-or-does-state-law-in-
  the-state-where-the-organization-is-legally-formed-satisfy-the-requirement ...................... 19

DOCUMENT PREPARED
ON RECYCLED PAPER

**I.**

**PRELIMINARY STATEMENT**

The Committee asks this Court to wade into uncharted territory by forcing the Non-Debtor Defendants – nonprofit religious and charitable organizations – into bankruptcy through the extreme remedy of substantive consolidation. No appellate court has approved this maneuver, and the only one to address this issue expressly rejected substantive consolidation of non-consenting nonprofit entities.

To be sure, the Ninth Circuit has authorized substantive consolidation of debtors and non-debtors (typically under limited circumstances involving overt fraud or complete domination and control by a debtor). But, it has not addressed whether a bankruptcy court may utilize its equitable powers under section 105 of the Bankruptcy Code (from which substantive consolidation is derived) to circumvent the Bankruptcy Code's express prohibition on involuntary bankruptcies against nonprofits. The Eighth Circuit has, however, decided this precise issue in *Archdiocese of St. Paul & Minneapolis*, a case with strikingly similar facts: a committee of unsecured creditors sought substantive consolidation of a Roman Catholic debtor corporation with numerous affiliated nonprofit and religious non-debtor organizations. The circuit court held that bankruptcy courts may not involuntarily thrust nonprofit non-debtors into bankruptcy through substantive consolidation because doing so "would effectively nullify the protections of § 303(a)" in violation of Supreme Court precedent. This Court should decide likewise and dismiss the substantive consolidation claim as a matter of law.

Even if the Committee could overcome this legal hurdle, it still must plead sufficient facts to state a claim for substantive consolidation by showing that either (1) creditors that actually dealt with the Debtor and Non-Debtor Defendants treated them as a single entity and did not rely on their separateness in connection with extending credit, or (2) their financial affairs are so hopelessly commingled that creditors would be harmed if the mess is not untangled for the creditors' benefit. The Committee fails to satisfy this high standard. On the first point, the Committee lacks facts to support its narrative, so it relies on a patchwork of conclusory allegations of "control," often

Document Prepared on Recycled Paper

conflates the Debtor (i.e., a corporation) with the Diocese (i.e., a geographic unit in which the Debtor and other non-debtor Catholic entities serve the community), and selectively and inaccurately mischaracterizes portions of documents that when examined paint a far more innocuous picture of the relationship between the Debtor and the Non-Debtor Defendants. At best, the allegations in the Complaint demonstrate a close working relationship, a common religious purpose, and shared mission between the Debtor and Non-Debtor Defendants, including several financial transactions intended to benefit the larger community within the Diocese, not a collective fraud or the type of interdependence required for substantive consolidation. On the second point, the Complaint fails to allege that it would be practically impossible and prohibitively expensive to even attempt to unscramble the Debtor's and Non-Debtor Defendants' affairs, let alone to such an extent that it would threaten the creditors' realization of assets by attempting to untangle the mess.

Furthermore, the Committee's claim for a blanket determination that all of the Non-Debtor Defendants' property constitutes property of the Debtor's bankruptcy estate is equally flawed. Not only does the Complaint fail to provide the Non-Debtor Defendants with sufficient detail about the property allegedly belonging to the Debtor, it fails to state a cognizable claim for relief. Section 541 defines what constitutes property of a bankruptcy estate as of the commencement of a debtor's bankruptcy case (and by virtue of state law what property rights exist), but it does not give rise to an independent claim for relief to lay claim to the Non-Debtor Defendants' property.

For these reasons, and those more fully discussed below, the Non-Debtor Defendants respectfully submit that the Complaint must be dismissed.

## II.

## FACTUAL BACKGROUND[1]

A.     The Non-Debtor Defendants

1.     The Roman Catholic Welfare Corporation of Oakland

RCWC is a California nonprofit religious corporation that was formed in 1962 for the

---

[1] Unless stated otherwise, the summary below is based on the non-conclusory factual allegations in the Complaint, which the Non-Debtor Defendants have assumed to be true solely for the purpose of the Motion, the documents incorporated by reference in the Complaint, which the Non-Debtor Defendants have attached to the Declaration of Ryan E. Manns filed concurrently herewith, and matters of which this Court may take judicial notice.

DOCUMENT PREPARED
ON RECYCLED PAPER

specific purpose of conducting religious and educational activities of the Roman Catholic Church within the Roman Catholic Diocese of Oakland. (Compl. ¶¶ 28, 46; RCWC AOI § II. B.). It has no members or shareholders. (RCWC AOI § II. D.; RCWC Bylaws § 2.1; Offering Memo, Appendix A-10). It oversees 32 parochial elementary schools and two high schools within the Diocese (Compl. ¶ 28). RCWC is the legal owner of ███████████████████████████████████████. (*Id*. ¶¶ 58, 63, 66, 67).

RCWC's business and affairs are managed by ███████████████████████████████
████████████████████████████████████████████████████████████████████████
(RCWC Bylaws § 3.3; *see* Compl. ¶ 48). RCWC's board, not the Debtor, has the power to manage the corporation in a manner it deems best, consistent with the corporation's stated purpose and applicable law. (RCWC's Bylaws § 3.3(b)). Among other powers, ████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████

As a nonprofit entity organized and operated exclusively for religious and educational purposes within the meaning of section 501(c)(3) of the Internal Revenue Code ("IRC"), RCWC's articles of incorporation provide that upon its liquidation, dissolution, or abandonment, it shall distribute any assets that may remain following payment or provision of payment of its debts and obligations, to the Debtor, so long as it remains a nonprofit entity qualified under section 501(c)(3) of the IRC and California law, and if the Debtor is no longer in existence, to a nonprofit entity similarly qualified that is operated exclusively for Roman Catholic religious purposes (RCWC AOI § III. C.; *see* Compl. ¶ 47).

| | |
|---|---|
| 1 | 2. *The Roman Catholic Cemeteries of the Diocese of Oakland* |
| 2 | RCC is a California nonprofit religious corporation formed in 1995 for the specific religious |
| 3 | purpose of providing burial and related internment services for members of the Roman Catholic |
| 4 | Church. (Compl. ¶ 46; RCC Bylaws § 2; RCC AOI § II. A.). It has no members or shareholders. |
| 5 | (RCC Bylaws § 3.1; Offering Memo, Appendix A-10). It operates and administers six diocesan |
| 6 | cemeteries, five diocesan mortuaries, two mausoleums, and one crematory on land owned by the |
| 7 | Debtor. (Compl. ¶ 30). Management of RCC's business is run by a board of directors, ███████ |
| 8 | ███████ and officers to whom management responsibility is delegated by the board. (RCC |
| 9 | Bylaws § 4.1(a), (c)). ██████████████████████████████████████ |
| 10 | ██████████████████████████████████████ |
| 11 | ██████████████████████████████████████ |
| 12 | ██ ██ |
| 13 | RCC too is a nonprofit entity qualified under section 501(c)(3) of the IRC. (RCC AOI § II. |
| 14 | B.). RCC's articles of incorporation likewise provide that upon the winding up and dissolution of |
| 15 | the corporation, it shall distribute whatever assets remain following payment of its liabilities to such |
| 16 | other organizations organized and operated exclusively for religious purposes that qualify for tax- |
| 17 | exempt status under section 501(c)(3) of the IRC. (*Id.* § IV. C.). |
| 18 | 3. *Adventus* |
| 19 | Adventus is a California nonprofit public benefit corporation formed in 1995 for charitable |
| 20 | purposes to perform various functions for the Diocese,[2] including those related to the ownership of |
| 21 | real estate. (Adventus AOI § II. A; Adventus Bylaws § 2). Adventus has no members or |
| 22 | shareholders. (Adventus Bylaws § 3.1; Offering Memo, Appendix A-10). It holds title to certain |
| 23 | single-family residences in Byron and Hayward and undeveloped land in Livermore. (Compl. ¶ |
| 24 | |
| 25 | [2] The Complaint conflates the Debtor (the corporation) with the Diocese (i.e., one of many geographic units in which the Roman Catholic Church operates) when quoting the Adventus's Bylaws ████ |
| 26 | ██████████████████████████████████████ |
| 27 | ██████████████████████████████████████ |
| 28 | ██████████████████████████████ |

DOCUMENT PREPARED
ON RECYCLED PAPER

26). Adventus' ███████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
███████████████████████████      ████████████████████████████
████████████████████████████████.

Adventus is a nonprofit organization operated exclusively for charitable purposes within the meaning of section 501(c)(3) of the IRC. (Adventus AOI § II. B). As a 501(c)(3) qualified entity, its articles of incorporation provide that it shall distribute whatever assets remain following payment of its liabilities to such other organizations organized and operated exclusively for charitable purposes that qualify for tax-exempt status under section 501(c)(3) of the IRC selected by Adventus' board of directors. (Compl. ¶ 45; Adventus AOI § IV. C.).

B.     The Relationship Between the Debtor and the Non-Debtor Defendants

1.     The Roman Catholic Diocese of Oakland

The bishop (the "Bishop"), currently the Most Reverend Michael C. Barber, S.J., is the religious leader and chief administrator for the Roman Catholic Diocese of Oakland (the "Diocese"). (*See* Compl. ¶¶ 25, 34). The Diocese was established in 1962 at the direction of Pope John XXII as a territorial division of the Roman Catholic Church in Contra Costa and Alameda Counties. (*See id.* ¶¶ 58, 59). The Bishop is responsible for ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

2.     Directors and Officers of the Debtor and Non-Debtor Defendants

Over the last 60 years, several individuals served as officers or directors for the Debtor and

one or more of the Non-Debtor Defendants. (Compl. ¶¶ 51-55). Below is a chart (based on the foregoing allegations in the Complaint) depicting the few times those individuals held contemporaneous positions with the Debtor and a Non-Debtor Defendant:

|  | Paul Bongiovanni | Michael Canizzaro | John S. Cummins | Floyd Begin |
|---|---|---|---|---|
| Debtor | 2017 (CFO) | 2007 (Attorney-in-Fact) | 1977-2003 (Bishop), 1999-2002 (President, CEO, CFO, Secretary, and agent) | 1962-1977 (Bishop) |
| RCC | 2019 (CFO), 2023-2024 (CFO, Secretary) | 2007 (Treasurer) | N/A | N/A |
| RCWC | 2020-2022 (Secretary, Agent) | 2007 (Secretary, Assistant Treasurer) | 1962 (Director), 1979 (President) | 1962 (Director), 1967 (President, CEO) |
| Adventus | 2019-2021 (President, CEO, CFO,[3] Agent[4]) | 2007 (VP) | N/A | N/A |

### 3. The 2007 Bond Issuance

In 2007, the Debtor authorized the issuance of bonds (the "Bonds") ▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓.

The Debtor and each of the Non-Debtor Defendants were part of a "Bond Obligated Group,"
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

---

[3] Mr. Bongiovanni served as Adventus' CFO in 2019. (Compl.¶ 52).

[4] Mr. Bongiovanni served as agent for Adventus in 2019 and 2021. (Compl.¶ 52).

DOCUMENT PREPARED
ON RECYCLED PAPER

1 ████████████████████████████████████████████████████

2 ████████████

3 In connection with the issuance of the Bonds, the Debtor furnished an Offering

4 Memorandum together with various appendices to purchasers of the Bonds. (Compl. ¶ 78), from

5 which the Committee quotes extensively.[5] ████████████████████████

6 ████████████████████████████████████████████████████

7 ████████████████████████████████████████████████████

8 ████████████████████████████████████████████████████

9 ████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████

14 ████████████████████████████████

15 ████████████████████████████████████████████████

16 ████████████████████████████████████████████████████

17 ████████████████████████████████████████████████████

18 ████████████████████████████████████████████████████

19 ████████████████████████████████████████████████████

20 ██████.[7]

21     *4.    The 2017 PNC Bank Debt*

22 In 2017, the Debtor borrowed $70 million for the purpose of funding the redemption of the

23

---

[5] Throughout the Complaint, the UCC quotes (at times inaccurately) the Bond Offering Memorandum and its accompanying Appendix A (*See* Compl. ¶¶ 39, 66, 67, 69-70, 75-76, 78-79).

[6] In the Complaint, the UCC quotes from Appendix A to the Bond Offering Memorandum for the proposition ████████████████████████████████████████████████████

[7] The Complaint inaccurately ██████████████████████████

Document Prepared on Recycled Paper

2963815176

outstanding Bonds (the "PNC Bank Debt") pursuant to that certain Credit and Security Agreement with PNC Bank (f/k/a Compass Bank), as lender, dated as of February 1, 2017 (the "Credit Agreement"). (Compl. ¶ 97). The Non-Debtor Defendants served as guarantors under the Credit Agreement. (*Id.* ¶ 98).

In the event a payment would not be made on time, the Debtor agreed to take certain steps to raise additional income to avoid or cure a default. Specifically, the Debtor, "through the Bishop of Oakland," agreed that with "public juridic persons subject to his governance," would dispose of those persons' assets, increase the customary rate of cathedraticum, impose exaction, increase fees, and institute a diocesan-wide extraordinary appeal. (Credit Agreement, ¶ 6.15).

As conditions precedent to the effectiveness of the Credit Agreement, each Non-Debtor Defendant was required to supply to PNC Bank its organizational documents, resolutions authorizing its entry into the agreement, certificates of good standing, and certificates of property and liability insurance naming the Lender as an additional insured. (*Id.* ¶ 4.01((a)(iii), (iv), (c)). Each Non-Debtor Defendant represented to PNC Bank that it has all "requisite power and authority under applicable Law" to "own its assets" including any and all related "Facilities" i.e. "land, leasehold interests and buildings and all fixtures and equipment (as defined in the UCC)." (*Id.* ¶ 5.01) and it did not require approval from any other person under any applicable law, including Canon law, to perform under the credit agreement. (*Id.* ¶ 5.04). Moreover, each Non-Debtor Defendant agreed to supply separate and combined financial statements to PNC Bank. (*Id.* ¶ 6.01).

   5.   *The Debtor's Loan with the Roman Catholic Cemeteries of the Diocese of Oakland*

███████████████████████████████████████████████████████████████████

███████████████████████████████████████ (the "RCC Loan") (Compl. ¶ 102). ████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████ RCC was a guarantor for the Debtor's debt to PNC Bank. (*Id.* ¶ 98).

DOCUMENT PREPARED ON RECYCLED PAPER

|    |                                                                                                         |
|----|---------------------------------------------------------------------------------------------------------|
| 1  |       *6.     Other Alleged Connections Between the Debtor and the Non-Debtor* |
| 2  |       *Defendants* |

The Debtor and each Non-Debtor Defendant has the same business and mailing address. (*Id.* ¶¶ 24, 27, 29, 31). Their administrative functions "are centered" in the Central Services Administration, which provides administrative services within the Diocese. (*Id.* ¶ 33). The Debtor's website contains a directory for entities and services associated with the Diocese, including links with information about the Non-Debtor Defendants. (*Id.* ¶ 71). Specifically, the website provides information concerning (i) Diocesan funeral and cemetery services that links to RCC's website and (ii) Diocesan schools. (*Id.* ¶ 72).

### III.

### LEGAL STANDARD

Rule 12(b)(6) authorizes the Court to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate if "the complaint lacks a cognizable legal theory" or "sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

To survive a Rule 12(b)(6) motion, a complaint must plead sufficient factual allegations sufficient to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* When deciding whether a claim is plausible, courts must generally accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the plaintiff. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But courts need not accept as true "a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. Nor must courts "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

When deciding a Rule 12(b)(6) motion, a court may generally consider only the factual

DOCUMENT PREPARED ON RECYCLED PAPER

allegations contained within the four corners of the complaint, exhibits attached to the complaint, and matters subject to judicial notice. *Swartz v. KPMG LLP,* 476 F.3d 756, 763 (9th Cir. 2007) (per curiam). However, documents a plaintiff refers to extensively or that form the basis for the plaintiff's claim may be incorporated by reference into the complaint and therefore considered part of the pleading. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). This "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken – or doom – their claims." *Khoja v. Orexigen Therapeutics, Inc.,* 898 F.3d 988, 1002 (9th Cir. 2018). Ninth Circuit courts may additionally consider a document to be incorporated "in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, (9th Cir. 2010); *see also Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) ("Plaintiff directly quoted the material . . . thereby incorporating [the material] into the Complaint.").

## IV.

## ARGUMENT

The Court should dismiss both counts in the Complaint. The second count, concerning substantive consolidation, is not legally viable because as non-profit entities, the Non-Debtor Defendants may not be forced into the equivalent of an involuntary bankruptcy through substantive consolidation, and even if they could, the Complaint fails to plead sufficient facts to support substantive consolidation. The first count, concerning the Debtor's purported legal and equitable ownership of the Non-Debtor Defendant's property, also fails. As a companion claim for a determination of which property would be subject to substantive consolidation, dismissal of the substantive consolidation claim must lead to dismissal of this claim too. Alternatively, to the extent the Committee asserts the first count as a stand-alone claim, the Complaint fails to state a cognizable claim for declaratory relief.

Document Prepared on Recycled Paper

2963815176

- 10 -

A.    The Court Should Dismiss the Committee's Claim for Substantive Consolidation (Count 2)

1.    *As Non-Profit Entities, the Non-Debtor Defendants May Not be Involuntarily Thrust into Bankruptcy Through Substantive Consolidation*

Substantive consolidation is not a right or claim found in the text of the Bankruptcy Code. Rather, it is a judicially created equitable remedy derived from a bankruptcy court's "general equity powers" found "in §105(a) of the Bankruptcy Code." *In re Bonham*, 229 F.3d 750, 764 (9th Cir. 2000). When applied, the doctrine allows the bankruptcy court to disregard the corporate form of separate legal entities, treat them as if they were merged into a single surviving entity, and pool their combined assets and liabilities together into a combined fund so that the claims of creditors against the separate entities are transformed into claims against the consolidated survivor. *See id.* Non-debtors on the receiving end of a substantive consolidation order effectively become debtors before the bankruptcy court and their property becomes property of the bankruptcy estate. *See, e.g., Kismet Acquisition, LLC v. Icenhower (In re Icenhower)*, 757 F.3d 1044, 1050 (9th Cir. 2014) (finding that non-debtor's foreign real property became property of the bankruptcy estate as a result of substantive consolidation order).

Courts have characterized substantive consolidation as both "extreme" (it may seriously affect the rights of creditors and non-debtor third parties) and "imprecise" (the Bankruptcy Code and substantive state law afford more precise remedies, for example, in the form of fraudulent transfer law and veil piercing). *See In re Owens Corning*, 419 F.3d 195, 211 (3d Cir. 2005). Therefore, substantive consolidation should be used sparingly, particularly when directed against entities not already in bankruptcy, and even then, only as a "last resort after considering and rejecting other remedies." *Id.*; *see also In re Howland*, 674 F. App'x 482, 488 (6th Cir. 2017) ("Substantive consolidation is an 'extreme' measure, only to be used 'sparingly,' especially when consolidating a non-debtor entity."); *Bonham*, 229 F.3d at 767 ("'resort to consolidation . . . should not be Pavlovian,' but as almost every other court has noted, should be used 'sparingly,' and in keeping with the equitable nature of substantive consolidation.") (internal citations omitted).

The Ninth Circuit has on few occasions authorized substantive consolidation of non-debtor

DOCUMENT PREPARED
ON RECYCLED PAPER

-11-

entities and debtors. *See, e.g. Bonham*, 229 F.3d at 762 (authorizing substantive consolidation of two non-debtor companies with an individual debtor based on extensive findings she used the companies to perpetrate a Ponzi scheme). It has never done so, however, in a case involving nonprofits. Indeed, only one appellate court, the Eighth Circuit Court of Appeals, has directly addressed the issue before the Court: whether a bankruptcy court has the power to order substantive consolidation of a debtor and nonprofit non-debtors. *See Official Comm. of Unsecured Creditors v. Archdiocese of St. Paul & Minneapolis* (*In re Archdiocese of St. Paul & Minneapolis*), 888 F.3d 944 (8th Cir. 2018).

In *St. Paul*, the Eighth Circuit held that the bankruptcy court lacked the equitable authority under section 105(a) of the Bankruptcy Code to order substantive consolidation of a debtor with nonprofit non-debtors. *Id*. at 947-48. There, like here, the unsecured creditors' committee sought to substantively consolidate the debtor, a Roman Catholic diocese (the Archdiocese of St. Paul and Minneapolis), with numerous nonprofit entities affiliated with the debtor (diocesan parish corporations, schools, cemeteries, and other related Roman Catholic religious organizations). *Id*.; *see also In re Archdiocese of St. Paul & Minnesota*, 553 B.R. 693, 696-97 (Bankr. D. Minn. 2016). The Archdiocese and the non-debtor nonprofit entities opposed the committee's requested relief on the ground that substantive consolidation would violate 11 U.S.C. § 303(a)'s prohibition on involuntary bankruptcy cases against nonprofits.

The Eighth Circuit began its analysis by acknowledging its prior holding that section 105(a) provides the source of a bankruptcy court's equitable power to direct substantive consolidation. *See In re Archdiocese of St. Paul & Minneapolis* 888 F.3d at 951 (citing *In re Giller*, 962 F.2d 796, 799 (8th Cir. 1992)). The court recognized, however, that more recent Supreme Court precedent limits the statute's reach: "the broad, catch-all equitable powers conferred under 11 U.S.C. § 105(a) do not allow a bankruptcy court to 'override explicit mandates of other sections of the Bankruptcy Code.'" *Id*. at 952 (quoting *Law v. Siegel*, 571 U.S. 415, 134 S. Ct. 1188, 1194 (2014)). Against this backdrop, the court turned to the text of section 303(a) of the Bankruptcy Code, which prohibits the commencement of an involuntary bankruptcy case against "a corporation that is not a moneyed, business, or commercial corporation." *Id*. (quoting 11 U.S.C. § 303(a)). Based on the plain language

DOCUMENT PREPARED
ON RECYCLED PAPER

of section 303(a), its legislative history, and Black's law dictionary, the court interpreted this phrase to cover the modern-day equivalent of a nonprofit organization. *Id*. Having determined the non-debtor organizations qualified as nonprofits under applicable state law, the Eighth Circuit held they could not be forced into bankruptcy involuntarily through substantive consolidation because doing so "would effectively nullify the protections of § 303(a)." *Id*. at 953; *see also Official Comm. of Unsecured Creditors v. Archdiocese of St. Paul & Minneapolis*, 562 B.R. 755, 762-763 (D. Minn. 2016) ("Because substantive consolidation of a charitable organization against its will equates to forcing the entity into involuntary bankruptcy, it violates an explicit mandate of the Bankruptcy Code.").

*St. Paul's* reasoning is aligned with recent precedent from the Supreme Court, Ninth Circuit, and other circuit courts of appeal that prohibit a bankruptcy court from using its equitable powers under section 105(a) to side step the Bankruptcy Code's express requirements. *See, e.g., Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 217 n.2 (2024) (holding that "§105(a) alone cannot justify" the imposition of non-consensual third-party releases that extinguish claims against non-debtors without textual support from section 1123(b) or elsewhere in the Bankruptcy Code because section 105(a) serves only to "carry out" authorities expressly conferred in the Code) (internal citations omitted); *United States v. Mackenzie (In re Leite)*, 112 F.4th 1246, 1252 (9th Cir. 2024) (reversing district court's decision that the bankruptcy court had the equitable authority under section 105(a) to apply a method for allocating the proceeds of the sale of real property not found in the Bankruptcy Code in violation of sections 551 and 724(a) of the Bankruptcy Code); *Brown v. Viegelahn (In re Brown)*, 960 F.3d 711, 719-20 (5th Cir. 2020) (holding that the bankruptcy court committed reversible error when, based on its equitable powers under section 105(a), it imposed conditions for modification of a confirmed plan in contravention of the textual requirements of section 1329 of the Bankruptcy Code).

Here, each Non-Debtor Defendant is a nonprofit entity organized under California law and qualified for tax exempt status under section 501(c)(3) of the IRC. (Compl. ¶¶ 28, 46; RCWC AOI; RCC AOI; Adventus AOI). There can be no serious dispute that each Non-Debtor Defendant is "a corporation that is not a moneyed, business, or commercial corporation" that may not be

DOCUMENT PREPARED
ON RECYCLED PAPER

involuntarily cast into bankruptcy under section 303(a) of the Bankruptcy Code. *See* 11 U.S.C. 303(a); *St. Paul*, 888 F.3d at 951. Section 105(a) of the Bankruptcy Code – a provision designed to carry out the other mandates of the Bankruptcy Code – may not be used to circumvent this express prohibition. *Law*, 571 U.S. at 421 ("Section 105(a) confers authority to 'carry out' the provisions of the Code … it is quite impossible to do that by taking action that the Code prohibits."). It follows that the Court may not enlist the equitable remedy of substantive consolidation (whose power is derived from section 105(a)) to override the Bankruptcy Code's explicit protection of nonprofit entities from the equivalent of involuntary bankruptcy. *See St. Paul*, 888 F.3d at 952–43. For this reason, the Complaint fails to state a cognizable legal theory for substantive consolidation against the Non-Debtor Defendants and must be dismissed.

> 2. *The Committee Has Failed to Adequately Plead a Claim for Substantive Consolidation*

Even if the Court had the authority to substantively consolidate the Non-Debtor Defendants and the Debtor over their objections, the Committee has failed to allege sufficient facts to support substantive consolidation under the standard articulated by the Ninth Circuit. In *Bonham*, the Ninth Circuit established a two-part disjunctive test for courts to consider when deciding a request for substantive consolidation: "(1) whether creditors dealt with the entities as a single economic unit and did not rely on their separate identity in extending credit; or (2) whether the affairs of the debtor are so entangled that consolidation will benefit all creditors." 229 F.3d at 766 (adopting Second Circuit's test in *In re Augie/Restivo Baking Co.*, 860 F.2d 515, 518 (2d Cir. 1988)).

The first factor is based on the notion that lenders "structure their loans according to their expectations regarding the borrower and do not anticipate either having the assets of a more sound company available in the case of insolvency or having the creditors of a less sound debtor compete for the borrower's assets." *Id. (*quoting *Augie/Restivo Baking Co.*, 860 F.2d at 518-19); *see Owens Corning*, 419 F.3d at 211, n.19 (explaining this factor is "meant to protect the prepetition expectations of those creditors" who in the typical scenario "have been misled by debtors' actions…and thus perceived incorrectly (and relied on this perception) that multiple entities were one."). The second factor supports substantive consolidation only where "the time and expense

necessary even to attempt to unscramble [the debtors' affairs] is so substantial as to threaten the realization of any net assets for all the creditors or where no accurate identification and allocation of assets is possible." *Id.* (*Augie/Restivo Baking Co.*, 860 F.2d at 519); *see Owens Corning*, 419 F.3d at 211, n.20 (where the entities assets have been "hopelessly commingled" substantive consolidation may be appropriate where without it "all creditors will be worse off (as Humpty Dumpty cannot be reassembled....."). Although "no uniform guideline" exists for ordering substantive consolidation, broadly speaking, courts should consider whether there has been a "disregard for corporate formalities or commingling of assets" by the targeted entities and "the benefits that substantive consolidation would bring against the harms that it would cause." *Bonham*, 229 F.3d at 765.

When applying these factors, Ninth Circuit courts have often pointed to instances of overt fraud, such as a Ponzi scheme, to support substantively consolidating debtors with non-debtors. *See, e.g., Bonham*, 229 F.3d at 762, n.6 (authorizing substantive consolidation of two non-debtor companies with an individual debtor based on extensive findings she used the companies to perpetrate a Ponzi scheme, the debtor commingled her assets with those of the non-debtors who had no separate existence of their own); *In re Stayton SW Assisted Living, LLC*, 2009 WL 5173512, at *5-6 (D. Or. Dec. 22, 2009) (permitting substantive consolidation of debtors with non-debtors where the principal of the debtor operated debtor and non-debtor entities in furtherance of a Ponzi like scheme that resulted in violations of federal and state securities laws and SEC receivership). Findings of complete dominion and control by the debtor over all aspects of the non-debtor are typically required for substantive consolidation of non-debtors. *See e.g., Clark's Crystal Springs Ranch, LLC v. Gugino (In re Clark)*, 548 B.R. 246, 255 (B.A.P. 9th Cir. 2016) (the court found "nothing in the record" distinguishing the non-debtor trust and a non-debtor LLC from the debtor, who used the trust and company to pay his personal expenses and those of his family members, kept no separate financial records, handpicked the trustee for the trust, and was the sole control person for the LLC's operations). Conversely, courts have often declined to authorize substantive consolidation of debtors with non-debtor entities when the debtor lacks an ownership or controlling interest over non-debtors. *See, e.g., Warfield v. Solomon Global, LLC (In re Solomon)*, 2022 WL

DOCUMENT PREPARED
ON RECYCLED PAPER

18715959 (Bankr. D. Ariz. Aug. 31, 2022) (collecting cases).

Not only does the Complaint fall woefully short of the requirements necessary to plead a plausible claim for substantive consolidation under *Bonham*, but it lacks many of the hallmarks that courts have found to support the extreme relief the Committee seeks—i.e. the existence of a fraudulent scheme, total domination and control by a debtor over non-debtors, or hopeless commingling between the debtor and any non-debtor entities. Rather, the Committee alleges that the Debtor and Non-Debtor Defendants conduct business from the same location and share a mailing address (Compl. ¶¶ 24, 27, 29, 31), had officers and directors that served contemporaneously for the Debtor and one or more Non-Debtor Defendant on a few occasions over the course of more than 60 years (*Id.* ¶¶ 52-55), took direction from the same chief religious and administrative official for the entire Diocese (the Bishop) (*Id.* ¶¶ 33, 34, 42) ███████████████ ███████████████████████████████████████████ (*Id.* ¶¶ 44, 48, 49), and that some information about the Debtor and certain Non-Debtor Defendants are available on the same website (*Id.* ¶ 72). The Committee further alleges that RCWC is the legal owner of ████████ █████████████████████████████████ (*Id.* ¶¶ 63, 66), Adventus holds title to the real estate consisting of single family residences in Byron and Hayward and undeveloped land in Livermore (*Id.* ¶ 26), and RCC administers land owned by the Debtor. (*Id.* ¶ 30).

These minimal allegations of interrelatedness between the Debtor and Non-Debtor Defendants do not begin to approach the "level of hopeless obscurity of interrelationships of the group" that warrant consolidation on an entanglement theory. *See Augie/Restivo*, 860 F. 2d at 515 (denying substantive consolidation due to lack of entanglement between the debtor and non-debtor entities where the available records permitted the identification of separately owned real property, and the calculation of separate account balances for inventories, liabilities, and receivables); *R2 Investments, LDC v. World Access, Inc. (In re World Access, Inc.)*, 301 B.R. 217, 276 (Bankr. N.D. Ill. 2003) (denying substantive consolidation despite (i) inter-company transfers and claims, (ii) incorporation of the subsidiary by the parent, (iii) consolidated financial statements, administrative functions, and insurance, and (iv) common ownership, management, directors and officers); *Morse Operations, Inc. v. Robins LE-COCQ, Inc. (In re Lease-A-Fleet, Inc.)*, 141 B.R. 869, 878 (Bankr.

DOCUMENT PREPARED
ON RECYCLED PAPER

E.D. Pa. 1992) (denying substantive consolidation notwithstanding allegations of overlapping directors, shared office space, intercompany loans, and the disregard of formalities when sharing services).

The Committee also relies on a series of cherry-picked (and at times inaccurate) quotes from the Debtor's pre-petition credit agreement and the offering memorandum provided to investors in connection with the Debtor's 2007 Bond issuance to grossly mischaracterize the relationship between the Debtor and the Non-Debtor Defendants. (Compl. ¶¶ 73–84, 97–100). None of these allegations reflect a creditor's views that the Debtor and Non-Debtor Defendants were one and the same. *See In re Republic Airways Holding Inc.*, 565 B.R. 710, 717 (Bankr. S.D.N.Y. 2017) ("The inquiry is whether creditors treated the debtors as a single entity, not whether the managers of the debtors themselves, or consumers viewed the [debtors] as one enterprise.").

For example, with respect to the PNC Bank Loan, the documents themselves contradict the Committee's allegations that creditors dealt with the Debtor and Non-Debtor Defendants as a single enterprise. In serving as guarantors on the PNC Bank Debt, the Non-Debtor Defendants made various representations about their separate assets and independent authority to approve entry into those arrangements and provided PNC Bank with their individual financial statements, organizational documents, and various corporate certificates. (Credit Agreement, ¶¶ 4.01((a)(iii), (iv), (c), 5.01, 5.04, 6.01). These reflect the understanding of PNC Bank, an institutional lender and third party, that it was dealing with independent corporate entities. *See Owens Corning*, 419 F.3d at 212-13 (declining to order substantive consolidation based on guarantees from affiliated entities that did not reflect a disregard for the debtor's separateness from the non-debtor guarantors); *see also Spradlin v. Beads & Steeds Inns, LLC (In re Howland)*, 674 F. App'x 482, 489 (6th Cir. 2017) ("In fact, allegations that the debtors personally guaranteed [the non-debtor's] loan and executed an assignment with [the non-debtor] indicate that they held themselves out to the world as separate entities.").

Moreover, the Committee cannot tie the Non-Debtor Defendants to the Debtor's covenant to take action through the Bishop to raise additional funds to stave off a default. (Compl. ¶ 100). In other words, the Credit Agreement does not reflect the Debtor's ability to sell or otherwise use the

DOCUMENT PREPARED
ON RECYCLED PAPER

1  *Non-Debtor Defendants'* assets to satisfy the loan obligation. (Credit Agreement ¶ 6.15, *Compare*

2  "those public juridic persons subject to his governance" *with* the separately defined term, the

3  "Obligated Group"). If PNC Bank believed the Debtor had that authority, there would be no need

4  for PNC Bank to obtain a guaranty from each of the Non-Debtor Defendants. *See, e.g.*, *In re*

5  *Verestar, Inc.*, 343 B.R. 444, 463 (Bankr. S.D.N.Y. 2006) (holding the complaint failed to

6  sufficiently allege that creditors saw the debtor and other entity as one because the complaint lacked

7  specific allegations of creditor confusion or the debtor's creditors extended credit based on the

8  target entity's financials).

9  The Committee attempts to draw a similarly false connection between the Debtor and Non-

10  Debtor Defendants with respect to the Bonds. In the Bond Offering Memorandum, ████████

11  ████████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████████

14  ████████████. (Compl. ¶ 79). Contrary to the Committee's allegations, the Bond Offering

15  Memorandum reflects the independence of the Non-Debtor Defendants from the Debtor ████████

16  ████████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████████

18  ████████████████████. The Committee also focuses on language in each

19  Non-Debtor Defendant's articles of incorporation about how its property would be disposed of

20  upon a dissolution or liquidation. (Compl. ¶¶ 45, 47). Yet, the cited language is authorized by

21  California law. *See* Cal. Corp. Code § 9132 (articles of incorporation of a nonprofit religious

22  corporation may include a provision that requires approval by a specified person or persons other

23  than the board for amendments to the articles or for their repeal); *see also* Cal. Corp. Code § 9240

24  (expressly authorizing the directors of a nonprofit religious corporation to consider both the

25  religious purposes of the corporation and applicable religious policy and authority). And the

26  language is modeled precisely on the form dissolution clause recommended by the Internal

27

28

DOCUMENT PREPARED
ON RECYCLED PAPER

2963815176

Revenue Service to all section 501(c)(3) qualified organizations.[8] At bottom, none of the Committee's allegations demonstrate hopeless commingling or that creditors were deceived into believing they were dealing with one indistinguishable entity. *In re Howland*, 674 F. App'x at 489 (affirming dismissal of claim for substantive consolidation due to the lack of allegations about distributing misleading information to creditors, inaccurately recording transactions with creditors, or otherwise misleading creditors into thinking the entities were the same enterprise).

Furthermore, the deficient allegations in the Complaint are remarkably similar to those the court in *St. Paul* determined failed to state a claim for substantive consolidation. *See St. Paul & Minnesota*, 553 B.R. at 704. There, like here, the committee alleged that the debtor and targeted entities shared board members, staff, headquarters, were answerable to the Archbishop who exercised certain managerial functions and oversight over the non-debtors and debtor alike, and in some instances over non-debtor assets, and had the authority to appoint board members for certain non-debtors. *Id*. at 702-03. In addressing these allegations, the court remarked: "There is no doubt that the Catholic Church is hierarchical in its organization and authoritarian in doctrinal matters. But those characteristics are insufficient for a court to ignore its corporate legal structure. The typical substantive consolidation is reserved for situations where the finances of two or more debtors are so confusingly intertwined that it is impossible to separate them. Nothing of the sort is alleged here." *Id*. at 703.

In summary, the non-conclusory facts alleged in the Complaint that are not otherwise contradicted by the documents incorporated by reference do not state a plausible claim for relief for substantive consolidation. Therefore, the Committee's claim against the Non-Debtor Defendants must be dismissed.

---

[8] https://www.irs.gov/charities-non-profits/does-the-organizing-document-contain-the-dissolution-provision-required-under-section-501c3-or-does-state-law-in-the-state-where-the-organization-is-legally-formed-satisfy-the-requirement.

DOCUMENT PREPARED ON RECYCLED PAPER

**B.** The Court Should Dismiss the Committee's Claim for a Determination that the Non-Debtor Defendants' Property is Property of the Debtor's Bankruptcy Estate (Count 1)

The Committee re-packages its deficient claim for substantive consolidation in the form of an extraordinary request for a declaratory judgment that the Debtor owns all of the Non-Debtor Defendants' property. (*See* Compl. ¶¶ 5, 112-116). The Committee does not allege the nature of the Debtor's interest in the Non-Debtor Defendants' property, claiming that the Debtor's "significant dominance and control" shows that "the Debtor has both the legal and equitable interests in the Property, and that it is property of the Debtor's estate." (*Id*. ¶ 113). The Committee defines "Property" as "assets of the Non-Debtor [Defendants], including their cash, investments and real estate assets." (*Id*. ¶ 5). At the same time, however, the Committee identifies RCWC and Adventus as the legal owners of various real and personal property (*see id*. ¶¶ 26, 63, 66), RCC as administering land owned by the Debtor (without identifying what property, if any, RCC owns). (*Id*. ¶ 30).

To the extent the Committee asserts this claim solely for the purpose of determining which property, if any, would be subject to substantive consolidation, this claim fails because the Committee's claim for substantive consolidation fails for the reasons stated above.

As a stand-alone cause of action, this claim too must fail because it lacks a cognizable legal theory and sufficient facts to support a claim for relief. *First*, this style of bare bones pleading long been rejected by Ninth Circuit courts because it fails to apprise the Non-Debtor Defendants of the claim against them sufficient to prepare a defense. *See, e.g., McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996) (To comply with Rule 8, a complaint should clearly and fully set forth "who is being sued, for what relief, and on what theory, with enough detail to guide discovery"). *Second*, the Committee's blanket request to determine that the Non-Debtor Defendants' property constitutes property of the Debtor's estate under section 541 of the Bankruptcy Code is not a cognizable claim for relief. Although a declaratory relief action may implicate and even require application of § 541, that section "defines property of the estate, but does not create a right to relief. It, therefore, follows that an action to enforce a right thereunder cannot exist." *Stokes v. Duncan (In re Stokes)*, 2013 WL

DOCUMENT PREPARED
ON RECYCLED PAPER

2963815176

Case: 24-04053   Doc# 9   Filed: 01/24/25   Entered: 01/24/25 19:56:36   Page 26 of 28

5313412, at \*6 (B.A.P. 9th Cir. Sept. 23, 2013) (vacating and remanding bankruptcy court's denial of motion to dismiss a claim for declaratory relief under section 541 of the Bankruptcy Code on the ground that it lacked jurisdiction over the property at issue); *see also In re Jackson*, 548 B.R. 353, 380 (Bankr. N.D. Ga. 2016) (in rejecting the plaintiff's stand-alone claim for a determination that the debtor and the estate lacked an interest in property subject to a constructive trust, the court reasoned that "[s]ection 541 defines property but it does not create a cause of action to determine what is and what is not estate property"); *see also Butler v. Candlewood Rd. Partners, LLC (In re Raymond)*, 529 B.R. 455, 470 (Bankr. D. Mass. 2015) ("section 541 of the Bankruptcy Code implicates trustees' duties under 11 U.S.C. § 704(a) to collect and reduce to money property of the estate, but it does not provide, in and of itself, a substantive claim for relief, absent invocation of the trustee's so-called 'strong arm' powers under 11 U.S.C. §§ 544-551 or 11 U.S.C. § 542."); *cf.* Fed. R. Bankr. P. 7001(9) (a proceeding to obtain a declaratory judgment is properly brought as an adversary proceeding with respect to 8 categories of relief, none of which refer to a determination of property of the estate under section 541 of the Bankruptcy Code). *Third*, the Committee does not allege any facts that the Debtor holds legal or equitable title to any of the Non-Debtor Defendants' respective property under applicable law. 11 U.S.C. § 541(a)(2) (defining property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the [bankruptcy] case."); *Butner v. U.S.*, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law."). *Fourth*, to the extent that the Committee is attempting to assert an alter ego claim, such a claim does not exist under federal or California law. *Pattern Design LLC v. We Are Sechey Inc.*, 2024 WL 4369668, at \*2 (N.D. Cal. Oct. 1, 2024) (dismissing under Rule 12(b)(6) claim for alter ego "to the extent it is pleaded as an independent cause of action rather than a theory of liability."). Therefore, it cannot form the basis for the Committee's claim for relief.

## V.

## CONCLUSION

For the foregoing reasons, the Non-Debtor Defendants respectfully request that their Motion to dismiss the Complaint for failure to state a claim for relief under Rule 12(b)(6) be granted with respect to all of the claims asserted in the Complaint.

DOCUMENT PREPARED
ON RECYCLED PAPER

```
 1

 2   Dated: January 24, 2024          REBECCA J. WINTHROP
                                      RYAN E. MANNS (*pro hac vice*)
 3                                    JASON I. BLANCHARD (*pro hac vice forthcoming*)
                                      NORTON ROSE FULBRIGHT US LLP
 4
                                      By: /s/ Rebecca J. Winthrop
 5                                        REBECCA J. WINTHROP
                                          *Attorneys for Roman Catholic Welfare*
 6                                        *Corporation of Oakland, Roman Catholic*
                                          *Cemeteries of the Diocese of Oakland, and*
 7                                        *Adventus*

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
```

Document Prepared
on Recycled Paper

- 22 -

2963815176