REDACTED VERSION OF OMNIBUS RESPONSE OF THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS TO (I) DEBTOR'S MOTION TO DISMISS FIRST AMENDED
ADVERSARY COMPLAINT AND (II) MOTION OF THE ROMAN CATHOLIC WELFARE
CORPORATION OF OAKLAND, THE ROMAN CATHOLIC CEMETERIES OF THE DIOCESE
OF OAKLAND AND ADVENTUS TO DISMISS THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS' FIRST AMENDED ADVERSARY COMPLAINT

**LOWENSTEIN SANDLER LLP**
JEFFREY D. PROL (admitted *pro hac vice*)
jprol@lowenstein.com
MICHAEL KAPLAN (admitted *pro hac vice*)
mkaplan@lowenstein.com
BRENT WEISENBERG (admitted *pro hac vice*)
bweisenberg@lowenstein.com
COLLEEN M. RESTEL (admitted *pro hac vice*)
crestel@lowenstein.com
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone: (973) 597-2500

**KELLER BENVENUTTI KIM LLP**
TOBIAS S. KELLER (Cal. Bar No. 151445)
tkeller@kbkllp.com
JANE KIM (Cal. Bar No. 298192)
jkim@kbkllp.com
GABRIELLE L. ALBERT (Cal. Bar No. 190895)
galbert@kbkllp.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone: (415) 496-6723

*Counsel to the Official Committee of Unsecured Creditors*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| *In re:* | Case No. 23-40523 WJL |
| THE ROMAN CATHOLIC BISHOP OF OAKLAND, a California corporation sole, | Chapter 11 |
| | Adv. Pro. 24-04053 WJL |
| Debtor. | |
| ---------------------------------------------- | **OMNIBUS RESPONSE OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO (I) DEBTOR'S MOTION TO DISMISS FIRST AMENDED ADVERSARY COMPLAINT AND (II) MOTION OF THE ROMAN CATHOLIC WELFARE CORPORATION OF OAKLAND, THE ROMAN CATHOLIC CEMETERIES OF THE DIOCESE OF OAKLAND AND** |
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE ROMAN CATHOLIC BISHOP OF OAKLAND, | |
| Plaintiff, | |
| v. | |

| | |
|---|---|
| THE ROMAN CATHOLIC BISHOP OF OAKLAND, ADVENTUS, THE ROMAN CATHOLIC WELFARE CORPORATION OF OAKLAND, AND THE ROMAN CATHOLIC CEMETERIES OF THE DIOCESE OF OAKLAND, | ) ) ) ) ) ) ) ) |
| Defendants. | ) ) ) |

**ADVENTUS TO DISMISS THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' FIRST AMENDED ADVERSARY COMPLAINT**

Judge: Hon. William J. Lafferty

Date: June 4, 2025
Time: 2:00 p.m. (Pacific Time)
Place: United States Bankruptcy Court
Courtroom 220
1300 Clay Street
Oakland, California 94612

# **<u>TABLE OF CONTENTS</u>**

**<u>Page</u>**

PRELIMINARY STATEMENT ................................................. 1

ARGUMENT ............................................................. 2

    I.     The Defendants Misrepresent the Applicable Legal Standard Under Federal
         Rule 12(b)(6). ......................................................... 2

    II.    The Amended Complaint Sets Forth a Cognizable Legal Theory and Contains
         Sufficient Facts in Support of Substantive Consolidation (Counts I, II, & III). ... 3

        A.    The Committee Has Sufficiently Pled the Entanglement Test as
              to Each of the Non-Debtor Affiliates. ........................................ 4

             1.    The Debtor and Each of the Non-Debtor Affiliates
                   Have a Unity of Interest and Ownership Such That
                   Separate Personalities No Longer Exist. .................................... 4

             2.    If Treated as Separate Entities, an Inequitable Result
                   Will Follow ............................................................ 11

        B.    The Committee Has Sufficiently Pled the Creditor
              Expectations Test as to the Non-Debtor Affiliates. ............................. 11

        C.    The Committee Has Sufficiently Pled that the Benefits of
              Substantive Consolidation Outweigh Any Harm to Defendants. ........... 13

    III.    The Amended Complaint Sets Forth a Cognizable Legal Theory and Contains
         Sufficient Facts in Support of a Finding that School Funds are Property of the
         Estate. ............................................................... 15

# TABLE OF AUTHORITIES

Page(s)

<small>CASES</small>

*In re Aroonsakool*,
    No. 11-06927, 2014 WL 1273696, at *8 (B.A.P. 9th Cir. Mar. 28, 2014) ........................... 12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................................... 2

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................ 2, 3

*In re Bonham*,
    229 F.3d 750 (9th Cir. 2000) ............................................................................ 4, 11, 13

*In re Brugnara Props. VI*,
    606 B.R. 371 (Bankr. N.D. Cal. 2019) ................................................................... 4, 10

*Cal. Crane Sch., Inc. v. Google LLC*,
    722 F. Supp. 3d 1026 (N.D. Cal. 2024) ................................................................... 3

*Matter of Castleman*,
    75 F.4th 1052 (9th Cir. 2023) ................................................................................ 14

*In re Cogliano*,
    355 B.R. 792 (B.A.P. 9th Cir. 2006) ....................................................................... 15

*In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*,
    28 F.4th 42 (9th Cir. 2022) ..................................................................................... 3

*In re Gilead Scis. Secs. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) ................................................................................ 3

*Grodt & McKay Realty, Inc. v. Comm'r*,
    77 T.C. 1221 (1981) ............................................................................................... 15

*Jackson v. Carey*,
    353 F.3d 750 (9th Cir. 2003) ................................................................................. 3

*Ranza v. Nike, Inc.*,
    793 F.3d 1059 (9th Cir. 2005) ................................................................................ 11

*In re Singh*,
    No. 6:14-BK-19919-SC, 2019 WL 1231146 (B.A.P. 9th Cir. Mar. 14, 2019) ..................... 4

Case: 24-04053    Doc# 45    Filed: 05/28/25    Entered: 05/28/25 17:39:22    Page 4 of 21

*In re SK Foods, LP,*
    499 B.R. 809 (Bankr. E.D. Cal. 2013) ...................................................................4, 11

*Sollberger v. Comm'r,*
    691 F.3d 1119 (9th Cir. 2012) .................................................................................15

*Walsh v. Kindred Healthcare,*
    798 F. Supp. 2d 1073 (N.D. Cal. 2011) ...............................................................4, 11

*Zoran Corp. v. Chen,*
    185 Cal. App. 4th 799 (Cal. Ct. App. 2010) ..............................................................4

**STATUTES**

11 U.S.C. § 541(a)(1) ...........................................................................................................14

28 U.S.C. § 2201(a) ..............................................................................................................15

**RULES**

Fed. R. Bankr. P. 7001 .........................................................................................................15

Fed. R. Bankr. P. 7008 ...........................................................................................................2

Fed. R. Civ. P. 8 .....................................................................................................................2

The Committee files this omnibus response (this "**Response**") in opposition to: (i) the *Debtor's Motion to Dismiss First Amended Adversary Complaint* [Dkt. No. 41] (the "**Debtor's Motion**") filed by the Debtor, and (ii) the *Motion of the Roman Catholic Welfare Corporation of Oakland, the Roman Catholic Cemeteries of the Diocese of Oakland and Adventus to Dismiss First Amended Adversary Complaint* [Dkt. No. 35] (the "**BOG Motion**," and, together with the Debtor's Motion, the "**Motions to Dismiss**") filed by RCWC, RCC and Adventus (together, the "**Non-Debtor Affiliates**"). For the reasons set forth below, the Court should deny the Motions to Dismiss, which seek dismissal of the Committee's first amended adversary complaint [Dkt. No. 32] (the "**Amended Complaint**") in this adversary proceeding (the "**Adversary Proceeding**").[1]

## PRELIMINARY STATEMENT

This Adversary Proceeding seeks recognition of a truth already conceded by the Debtor to its prospective creditors: RCWC, RCC and Adventus are mere components of a single enterprise operated by the Debtor (through the Bishop). (Am. Compl. ¶ 21). Through the Amended Complaint, the Committee provides detailed factual allegations to support the logical next step: substantive consolidation of the entities to avoid injustice to Abuse Claimants. For example, the factual allegations satisfying the Ninth Circuit's substantive consolidation test show that (i) each of the Non-Debtor Affiliates are alter egos of the Debtor under California law, thus satisfying the first element of substantive consolidation through the Entanglement Test (defined herein), (ii) each of the Non-Debtor Affiliates satisfy the Creditor Expectations Test (defined herein), and (iii) the benefits of substantive consolidation outweigh any hypothetical harm to the Non-Debtor Affiliates.

Separately, the School Funds—held at OPF and over which RCWC has *no* control— are property of the Debtor's estate under section 541 of the Bankruptcy Code. Not only are the School Funds titled in the name of the Debtor, but the School Funds have historically been

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Amended Complaint or Motions to Dismiss, as applicable.

- 1 -

and remain under the exclusive control of the Debtor. Indeed, the Debtor (i) unilaterally entered into agreements with OPF which govern the Debtor's and OPF's (not RCWC's) oversight and decision-making power regarding investment of the School Funds, (ii) transferred the School Funds to OPF without explicit authority or approval from RCWC, and (iii) controls how and when Schools Funds may be used. When the facts in the Amended Complaint are taken as true, and all inferences drawn in the Committee's favor, the Committee has established that the Debtor holds both a legal and equitable interest in the School Funds, the latter being a recognized form of property ownership under California law which makes the School Funds property of the Debtor's estate.

For these reasons, as further set forth herein, the Motions to Dismiss must be denied.

## ARGUMENT

### I. The Defendants Misrepresent the Applicable Legal Standard Under Federal Rule 12(b)(6).

The Federal Rules of Civil Procedure (the "**Federal Rules**") require a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); Fed. R. Bankr. P. 7008 ("Fed. R. Civ. P. 8 applies in an adversary proceeding."). Unless a complaint fails to allege sufficient facts that, ***when accepted as true and read with all reasonable inferences drawn in the plaintiff's favor,*** state a claim for relief that is ***facially plausible***, the complaint should not be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

To survive a challenge under Federal Rule 12(b)(6), a complaint "does not need detailed factual allegations." *Twombly*, 550 U.S. at 555 (internal citations omitted). Evaluating plausibility "does not impose a probability requirement at the pleading stage," but simply calls for factual allegations that are sufficient to raise a reasonable expectation that discovery will reveal evidence of the claim. *Id.* at 556. The issue, then, is "not whether a

Case: 24-04053   Doc# 45   Filed: 05/28/25   Entered: 05/28/25 17:39:22   Page 7 of 21

plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003) (internal marks and citations omitted). Not only does the Committee allege facts sufficient to state a claim in each of the counts contained in the Amended Complaint, it far exceeds that pleading standard, which the Ninth Circuit has made clear is a low bar:

> But so long as the plaintiff alleges facts to support a theory that is not facially implausible, the court's skepticism is best reserved for later stages of the proceedings when the plaintiff's case can be rejected on evidentiary grounds.

*In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008).

Ignoring the relevant legal standard, the Defendants spend the bulk of the Motions to Dismiss contesting the Committee's factual allegations while simultaneously seeking to introduce new facts. (*See, e.g.*, BOG Mot. at 6–7, 7 n.9, 23, 25) (extensively referencing "facts" and documents outside the Amended Complaint to dispute the factual allegations within the Amended Complaint); (Debtor's Mot. at 13–14) ("This . . . completely misstates the facts."). The Defendants' arguments (and attempts to dispute factual allegations) fall flat at the motion to dismiss phase, where (as discussed below) the Committee has provided more than sufficient factual detail to "nudge their claims across the line from conceivable to plausible." *Cal. Crane Sch., Inc. v. Google LLC*, 722 F. Supp. 3d 1026, 1038 (N.D. Cal. 2024) (quoting *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 47 (9th Cir. 2022)). Nothing more is required from the Committee at this phase in the Adversary Proceeding, and the Defendants' efforts to dispute the Committee's factual allegations must be rejected.

## II. The Amended Complaint Sets Forth a Cognizable Legal Theory and Contains Sufficient Facts in Support of Substantive Consolidation (Counts I, II, & III).

In the Ninth Circuit, a bankruptcy court may substantively consolidate a non-debtor affiliate with a debtor when two elements are satisfied: (i) either (a) the affairs of the debtor are so entangled that consolidation will benefit all creditors (the "**Entanglement Test**") *or* (b)

creditors dealt with the entities as a single economic unit and did not rely on their specific identity in extending credit (the "**Creditor Expectations Test**"), **and** (ii) the benefits of substantive consolidation outweigh the harm (if any) to the entity being consolidated. *In re Bonham*, 229 F.3d 750, 766–67 (9th Cir. 2000) (internal citations omitted).

### A. The Committee Has Sufficiently Pled the Entanglement Test as to Each of the Non-Debtor Affiliates.

A showing that entities are "alter egos" under California law satisfies the Entanglement Test. *In re SK Foods, LP*, 499 B.R. 809, 833–34 (Bankr. E.D. Cal. 2013). Under California state law, there are two general requirements to invoke the alter ego doctrine: (i) "such a unity of interest and ownership that the separate personalities of the two corporations no longer exist," and (ii) "if the acts are treated as those of only one of the corporations, an inequitable result will follow." *Walsh v. Kindred Healthcare*, 798 F. Supp. 2d 1073, 1082 (N.D. Cal. 2011).

### 1. The Debtor and Each of the Non-Debtor Affiliates Have a Unity of Interest and Ownership Such That Separate Personalities No Longer Exist.

The non-exhaustive list of relevant "unity of interest" alter ego factors under California law include, among others: (i) failure to maintain arm's length relationships among related entities, (ii) shared officers and/or directors, (iii) using the same office or business location, (iv) using shared employees, (v) commingling of funds or other assets, (vi) one entity holding out that it is liable for the debts of another, and (vii) treatment by one entity of the other's assets as its own. *See, e.g.*, *In re Brugnara Props. VI*, 606 B.R. 371, 380 (Bankr. N.D. Cal. 2019) (citations omitted). "No single factor is determinative, and instead a court must examine all the circumstances to determine whether to apply the doctrine." *Zoran Corp. v. Chen*, 185 Cal. App. 4th 799, 812 (Cal. Ct. App. 2010) (internal citations and marks omitted); *see also In re Singh*, No. 6:14-BK-19919-SC, 2019 WL 1231146, at *6 (B.A.P. 9th Cir. Mar. 14, 2019) (stating "no one characteristic governs") (internal citations omitted).

With respect to RCWC, the Committee has alleged, *inter alia*, the following "unity of interest" factors:

- ***Failure to Maintain Arm's Length Relationships Among Related Entities.***
███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████ Further, all proposed capital expenditures of RCWC's Schools that exceed $50,000 must be submitted to the Bishop for approval.  (*Id.* ¶¶ 33, 120(i)). ███████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████

- ***Shared Officers and/or Directors.***  The Debtor and RCWC have historically shared officers and directors, including: (i) Paul Bongiovanni (CFO of the Debtor, and simultaneously CFO, secretary, and agent of process for RCWC), (ii) Michael Canizzaro (attorney-in-fact for the Debtor and simultaneously the secretary and assistant treasurer of RCWC), (iii) John S. Cummins (former Bishop and president, CEO, CFO, secretary and agent of service of the Debtor, and RCWC's CEO), and (iv) Floyd L. Begin (former Bishop and director of the Debtor, and CEO of RCWC).  (*Id.* ¶¶ 25, 120(ii)).

- ***Same Office or Business Location.***  The Debtor and RCWC share the same business and mailing address at 2121 Harrison Street, Suite 100, Oakland, California 94612.  (*Id.* ¶¶ 23, 120(iii)).

- ***Shared Employees.***  The Debtor and RCWC share a central administrative staff through the Chancery, which oversees all accounting, business development and strategic planning, human resources, information systems, property management services, education services and overall operations within the

Diocese, including the operations of RCWC. (*Id.* ¶¶ 27–28, 120(iv)). ████

████████

████████

- ***Commingling of Funds or Other Assets.*** RCWC's funds in the DLF, which funds were transferred to OPF before the Debtor's bankruptcy filing, have been historically commingled with those of the Debtor. (*Id.* ¶¶ 77, 120(v)).

- ***One Entity Holding Out That it is Liable for the Debts of Another.*** ████

████████

████████

████████

██ ███ ████

████████

████ The Debtor made similar representations in connection with the 2017 PNC Credit and Security Agreement. (*Id.* ¶¶ 110–12, 120(vi)). ████

███ ████ ████ █ ███ ████ ██ ████

████████

████ █████ The Debtor also maintains a website that provides the public with a single online source containing resources related to RCWC. The "Diocese" tab of the Debtor's website includes a "Diocesan Directory" with information on diocesan schools, including a "school finder" with locations of all Diocesan schools, in addition to a direct link to the "Catholic Schools Diocese of Oakland." (*Id.* ¶ 26). The reasonable inference to derive from these alleged facts is that the Debtor and RCWC consider themselves, and represent to their creditors and the public that they are, a single unit, jointly obligated to pay Diocese debt.

---

[2] ████████
████████
████████
████████

- • **Treatment by One Entity of the Other's Assets as its Own.** ███████████
  ███████████████████████████████████████████████████████
  ███████████████████████████████████████████████████████
  ███████████████████████████████████████████████████████
  █████████████████████ ██████████████ ██████████████████
  ███████████████████████████████████████████████████████
  ███████████████████████████████████████████████████████
  ███████████████████████████████████████████████████████
  ███████████████████████████████████████████████████████
  ███████████████████████████████████████████████████████
  ███████████████████████████████████████████████████████
  ███████████████████████████████████████████████████████
  ███████████████████████████████████████████████████████
  ███████████████

With respect to RCC, the Committee has alleged, *inter alia*, the following "unity of interest" factors:

- • **Failure to Maintain Arm's Length Relationships Among Related Entities.** The Debtor, through the Bishop, appoints each of RCC's directors and the Bishop appoints each of the principal staff members of RCC. Thus, the Bishop exercises control over all assets owned by RCC. (*Id.* ¶¶ 40, 53, 54, 131(i)). Further, all real property necessary to carry out RCC's activities is owned by the Debor and leased to RCC. (*Id.* ¶ 38).

- • **Shared Officers and/or Directors.** The Debtor and RCC have historically shared officers and directors, including: (i) Paul Bongiovanni (CFO of the Debtor and CFO and secretary of RCC), and (ii) Michael Canizzaro (attorney-in-fact for the Debtor and the secretary and treasurer of RCC). (*Id.* ¶¶ 25, 131(ii)).

- **Same Office or Business Location.** The Debtor and RCC share the same business and mailing address at 2121 Harrison Street, Suite 100, Oakland, California 94612. (*Id.* ¶¶ 23, 131(iii)).

- **Shared Employees.** In addition to the shared roles of directors and officers discussed above, the Debtor and RCC share a central administrative staff through the Chancery, which oversees all accounting, business development and strategic planning, human resources, information systems, property management services, education services and overall operations within the Diocese, including the operations of RCC. (*Id.* ¶¶ 27–28, 131(iv)). ███████
████████████████████████████████████████
████████████████████████████████

- **Commingling of Funds or Other Assets.** RCC's funds in the DLF, which funds were transferred to OPF before the Debtor's bankruptcy filing, have been historically commingled with those of the Debtor. (*Id.* ¶¶ 77, 131(v)).

- **One Entity Holding Out That it is Liable for the Debts of Another.** ████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████████████████████████████). The Debtor made similar representations in connection with the 2017 PNC Credit and Security Agreement. (*Id.* ¶¶ 110–12, 131(vi)). ███████████
████████████████████████████████████████
████████████████████████████████████████
██████████████████████, and maintains a website that provides the public with a single online source containing resources related to RCC, (*Id.* ¶ 26). The "Diocese" tab of the Debtor's website includes a "Diocesan Directory" with a link providing access to the RCC/Catholic Funeral and Cemetery Services

- 8 -

webpage that includes information on services, locations, mission programs, key contacts, and FAQs. (*Id.*). The reasonable inference to derive from these alleged facts is that the Debtor and RCC consider themselves, and represent to their creditors and the public that they are, a single unit, jointly obligated to pay Diocese debt.

- ***Treatment by One Entity of the Other's Assets as its Own.*** ████████████
████████████████████████████████
████████████████████████████████
████████████████████████

With respect to Adventus, the Committee has alleged, *inter alia*, the following "unity of interest" factors:

- ***Failure to Maintain Arm's Length Relationships Among Related Entities.*** The Debtor, through the Bishop, appoints each of Adventus's directors and the Bishop appoints each of the principal staff members of Adventus. Thus, the Bishop exercises control over all assets owned by Adventus. (*Id.* ¶¶ 43, 53, 54, 141(i)). Further, the Bishop must review and provide advice on any budgets adopted by Adventus. (*Id.* ¶ 51).

- ***Shared Officers and/or Directors***. The Debtor and Adventus have historically shared officers and directors, including: (i) Paul Bongiovanni (CFO of the Debtor and president, CEO, CFO, and agent of service of process for Adventus), and (ii) Michael Canizzaro (attorney-in-fact for the Debtor and vice president of Adventus). (*Id.* ¶¶ 25, 141(ii)).

- ***Same Office or Business Location.*** The Debtor and Adventus share the same business and mailing address at 2121 Harrison Street, Suite 100, Oakland, California 94612. (*Id.* ¶¶ 23, 141(iii)).

- ***Shared Employees***. In addition to the shared roles of directors and officers discussed above, the Debtor and Adventus share a central administrative staff

through the Chancery, which oversees all accounting, business development and strategic planning, human resources, information systems, property management services, education services and overall operations within the Diocese, including the operations of Adventus and the Non-Debtor Affiliates. (*Id.* ¶¶ 27–28, 141(iv)). ████████████████████

████████████████████████████████████

████████████████████████

- **One Entity Holding Out That it is Liable for the Debts of Another.** ████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████ ████████████ The Committee further alleges that the Debtor made similar representations in connection with the 2017 PNC Credit and Security Agreement. (*Id.* ¶¶ 110–12, 141(v)). ████████████████████████

████████████████████████████████████

██████████████████████ Thus, the reasonable inference to be drawn is that third parties were made to believe there was no meaningful distinction between the Debtor and Adventus, which was a mere component of the Debtor's enterprise.

- **Treatment by One Entity of the Other's Assets as its Own.** ████████

████████████████████████████████████

████████████████████████████████████

████████████████████████

When the above allegations are taken as true and all reasonable inferences are drawn in the Committee's favor, the Committee plainly establishes the "unity of interest" required for an alter ego finding under California law. *See, e.g.*, *In re Brugnara Props.*, 606 B.R. at 382

- 10 -

(finding "unity of interest" sufficiently pled with evidence of commingling of funds, an entity treating another's assets as its own, failure to observe corporate formalities, and lack of assets unrelated to the debtor); *In re SK Foods*, 499 B.R. 809 at 841–42 (finding defendants and debtors to be alter egos in the substantive consolidation context based on the satisfaction of just five factors: diversion of assets, disregard of corporate separateness, commingling of assets and business functions, undercapitalization, and common ownership and control).

### 2. If Treated as Separate Entities, an Inequitable Result Will Follow.

The Committee sufficiently pled, as to each of the Non-Debtor Affiliates, the second element of alter ego under California law: "that if the acts are treated as those of only one of the corporations, an inequitable result will follow." *Walsh*, 798 F. Supp. 2d at 1082.[3]

The Non-Debtor Affiliates hold, in the aggregate, ████████████████ ████████████████████████████████████████████████████. (*See* Am. Compl. ¶¶ 35, 41, 45). The Debtor is using the Chapter 11 Case to obtain a litigation advantage over Survivors by placing the Property beyond their reach, but still within the Debtor's reach and control. (*See id.* ¶ 125). If the Court finds that the "unity of interest" factors are sufficiently pled, failing to treat the Non-Debtor Affiliates as one unit with the Debtor would allow the Debtor to shelter hundreds of millions of dollars in assets from creditors, including cash, investments and real property. (*See id.* ¶ 1).

### B. The Committee Has Sufficiently Pled the Creditor Expectations Test as to the Non-Debtor Affiliates.

The first element of substantive consolidation can alternatively be shown through the Creditor Expectations Test, which is satisfied if creditors did not rely on the alleged separate identity between a debtor and its affiliates in extending credit. *In re Bonham*, 229 F.3d at 766. If the movant "establishes a close interrelationship between debtors and the non-debtor entities,

---

[3] The Defendants' argument that the second element of alter ego requires fraud, (*see* Debtor's Mot. at 10; BOG Mot. at 17), is belied by the case law that it cites, which notes that a showing of "fraud **or** injustice" can establish alter ego. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2005), *abrogated on other grounds by Williams v. Yamaha Motor Co.*, 851 F.3d 1015 (9th Cir. 2017) (internal marks omitted and emphasis added).

there is a presumption that creditors did not rely on their separate credit. The burden of proof then shifts to the parties opposing substantive consolidation to show otherwise." *In re Aroonsakool*, No. 11-06927, 2014 WL 1273696, at *8 (B.A.P. 9th Cir. Mar. 28, 2014) (citing *In re Bonham*, 229 F.3d at 767); *see also In re SK Foods*, 499 B.R. at 834 ("[W]here close interrelationships are established between the debtor and target entities, it will be presumed that the target's creditors did not rely on the separate credit of the targets, and a court is justified in ordering substantive consolidation in the absence of proof to the contrary by the parties opposing that relief.").

The Committee sets forth numerous factual allegations that the Defendants held themselves out to creditors as one and the same. ███████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████ ████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████ ██████████████ █████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████

1

2

3

4

The Debtor used a similar strategy in securing credit from PNC in 2017, representing in a "Covenant to Obtain Assets" that it could avoid or cure an event of default under the 2017 PNC Credit and Security Agreement by availing itself of the Bishop's authority to use, control, and dispose of the assets of the Non-Debtor Affiliates. (*Id.* ¶ 112). By blurring the lines between its own assets and those of its affiliates, the Debtor fostered the reasonable expectation that the assets of the Non-Debtor Affiliates would be available to support the Debtor's obligations.

The Debtor also maintains a website that provides the public with a single online source containing Non-Debtor Affiliate-related resources. The "Diocese" tab of the Debtor's website includes a "Diocesan Directory" with a link providing access to the RCC/Catholic Funeral and Cemetery Services webpage that includes information on services, locations, mission programs, key contacts, and FAQs, and information on diocesan schools, including a "school finder" with locations of all Diocesan schools, in addition to a direct link to the "Catholic Schools Diocese of Oakland." (*Id.* ¶ 26). The reasonable inference to derive from this alleged fact is that the Debtor and the Non-Debtor Affiliates are a single unit.

Altogether, the Debtor's written representations and course of conduct support a finding or inference that Deutsche Bank, PNC and bondholders relied on the collective financial resources and operational unity of the Defendants in extending credit.

### C. The Committee Has Sufficiently Pled that the Benefits of Substantive Consolidation Outweigh Any Harm to Defendants.

The Committee sufficiently pled the second element of substantive consolidation: that the benefits of substantive consolidation outweigh the harm to any entity being consolidated. *See In re Bonham*, 229 F.3d at 767. In the Ninth Circuit, this element requires no "formalistic

- 13 -

cost-benefit analysis," *id.* at 767 n.12, and has one "sole aim: fairness to all creditors." *Id.* at 765 (internal marks and citations omitted). Further, the Ninth Circuit has emphasized that greater exposure to legal risk, or loss of a legal defense, is not "harm" for purposes of this element. *Id.* at 768 (adding, "substantive consolidation will allow a truly equitable distribution of assets by treating the corporate shells as a single economic unit").

Substantive consolidation will achieve fairness to all creditors, with the benefits to creditors outweighing the harm (if any) to the Non-Debtor Affiliates. First, substantive consolidation would substantially increase the assets available to pay Survivors. (Am. Compl. ¶ 125). The Non-Debtor Affiliates hold, in the aggregate, █████████████████████ ███████████████████████████████████████████████████████████. (*See id.* ¶¶ 35, 41, 45). The Debtor is using the Chapter 11 Case to obtain a litigation advantage over Survivors by placing the Property beyond creditors' reach, but still within the Debtor's reach and control. (*See id.* ¶ 125). These facts lead to the reasonable inference that the assets contemplated for distribution in the Debtor's currently-proposed chapter 11 plan do not represent the entirety of the Debtor's estate, and that a failure to make all assets available to the Debtor's creditors would only aid the Debtor in its efforts to shield assets from its stakeholders. Indeed, all stakeholders of the Debtor's estate will benefit from substantive consolidation because it will streamline a potentially contested plan confirmation process and minimize related fees and expenses to be incurred by the Debtor's estate. Finally, consolidation will pose no harm to the Non-Debtor Affiliates or its creditors, given that the entities already operate as one and the same with the Debtor (as set forth above) and are seeking releases under the Debtor's proposed plan.

Because the Amended Complaint alleges facts which, when accepted as true and viewed in the light most favorable to the Committee, plausibly support a claim for substantive consolidation of the Defendants, the Motions to Dismiss must be denied as to Counts One through Three of the Amended Complaint.

**III.** **The Amended Complaint Sets Forth a Cognizable Legal Theory and Contains Sufficient Facts in Support of a Finding that School Funds are Property of the Estate.**

Section 541 of the Bankruptcy Code broadly defines property of the estate to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1); *Matter of Castleman*, 75 F.4th 1052, 1056 (9th Cir. 2023), *cert. denied sub nom., Castleman v. Burman*, 144 S. Ct. 813 (2024). If a debtor holds an equitable interest in property, its bankruptcy estate acquires an equitable interest in the property. *See* 5 Collier on Bankruptcy ¶ 541.03 (16th 2024). Further, Bankruptcy Rule 7001 provides that an adversary proceeding is the proper forum to adjudicate whether property belongs to the estate. *See* Fed. R. Bankr. P. 7001(2), (9); *see also In re Cogliano*, 355 B.R. 792, 806 (B.A.P. 9th Cir. 2006) ("When the question of whether property is part of the estate is in controversy, Rule 7001(2) requires an adversary proceeding, absent waiver or harmless error . . . ."). The Committee seeks declaratory relief under Bankruptcy Rule 7001 and/or 28 U.S.C. § 2201(a) that the School Funds are property of the Debtor's estate under section 541 of the Bankruptcy Code because the Debtor holds legal title to the School Funds and otherwise is the equitable owner of the School Funds under California state law. (*See* Am. Compl. ¶¶ 72, 85–109, 146–55).

The Debtor incorrectly argues that the Committee's declaratory judgment action is entirely predicated on control. (*See* Debtor's Mot. at 20, 22–23). Paragraph 72 of the Amended Complaint states: "Before April 2023, all DLF and Endowment Pool bank and investment accounts were titled in the name of the Debtor." The Debtor concedes that the transfer of the School Funds to OPF did not alter this status. (*See* Debtor's Mot. at 20).

Even if were one to ignore legal title, the indicia of ownership evidence that it is the Debtor, not RCWC, which holds an equitable interest in the School Funds. For example, under California and federal law, courts and the Internal Revenue Service look at several factors to determine who, in fact owns the property in question. The inquiry considers, among other factors, how the parties treat the property (i.e., the intention of the parties regarding the property) and who

- 15 -

has possession of the property.  *See, e.g.*, *Sollberger v. Comm'r*, 691 F.3d 1119, 1124 (9th Cir. 2012) (quoting *Grodt & McKay Realty, Inc. v. Comm'r*, 77 T.C. 1221, 1237–38 (1981)).

As set forth in the Amended Complaint and described herein, the Debtor treated the School Funds as if they belonged to the Debtor itself by maintaining all control and decision-making authority over the Schools Funds (which are in the possession of OPF).  For example:

■ ████████████████████████████████████████
████████████████████████████████████████
████████████████████

- the Debtor, not RCWC, possessed and controlled the School Funds before the OPF Transfer (*Id.* ¶ 147); and

■ ████████████████████████████████████████
████████

Accepting the facts alleged in the Amended Complaint as true—as well as the reasonable inferences drawn therefrom—the Committee has sufficiently pled that the Debtor is the legal and equitable owner of the School Funds.  Therefore, the Motions to Dismiss must also be denied as to Count Four.

**WHEREFORE,** the Committee requests that the Court deny the Motions to Dismiss in their entirety and grant any other relief that is just and proper.

Dated:  May 28, 2025

**KELLER BENVENUTTI KIM LLP**
**LOWENSTEIN SANDLER LLP**

By:  */s/ Gabrielle L. Albert*
Tobias S. Keller
Jane Kim
Gabrielle L. Albert

- and -

Jeffrey D. Prol
Michael A. Kaplan
Brent Weisenberg
Colleen M. Restel

*Counsel for the Official Committee of Unsecured Creditors*

- 16 -