| | |
|---|---|
| 1 | REBECCA J. WINTHROP (SBN 116386) |
| | NORTON ROSE FULBRIGHT US LLP |
| 2 | 555 South Flower Street, Forty-First Floor |
| | Los Angeles, California 90071 |
| 3 | Telephone: (213) 892-9200 |
| | Facsimile: (213) 892-9494 |
| 4 | rebecca.winthrop@nortonrosefulbright.com |
| 5 | RYAN E. MANNS (*pro hac vice*) |
| | JAMES V. LEITO (*pro hac vice*) |
| 6 | JASON I. BLANCHARD (*pro hac vice*) |
| | NORTON ROSE FULBRIGHT US LLP |
| 7 | 2200 Ross Avenue, Suite 3600 |
| | Dallas, Texas 75201 |
| 8 | Telephone: (214) 855-8000 |
| | Facsimile: (214) 855-8200 |
| 9 | ryan.manns@nortonrosefulbright.com |
| | james.leito@nortonrosefulbright.com |
| 10 | jason.blanchard@nortonrosefulbright.com |

*Attorneys for Roman Catholic Welfare Corporation of Oakland, Roman Catholic Cemeteries of the Diocese of Oakland, and Adventus*

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC BISHOP OF OAKLAND, a California corporation sole,<br><br>Debtor.<br><br>THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE ROMAN CATHOLIC BISHOP OF OAKLAND<br><br>Plaintiff,<br><br>v.<br><br>THE ROMAN CATHOLIC BISHOP OF OAKLAND, ADVENTUS, THE ROMAN CATHOLIC WELFARE CORPORATION OF OAKLAND, AND THE ROMAN CATHOLIC CEMETERIES OF THE DIOCESE OF OAKLAND,<br><br>Defendants. | Case No. 23-40523 WJL<br><br>Chapter 11<br><br>Adv. Pro. No. 24-04053 WJL<br><br>**REPLY MEMORANDUM IN SUPPORT OF THE MOTION OF THE ROMAN CATHOLIC WELFARE CORPORATION OF OAKLAND, THE ROMAN CATHOLIC CEMETERIES OF THE DIOCESE OF OAKLAND, AND ADVENTUS TO DISMISS THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' FIRST AMENDED COMPLAINT**<br><br>Date: June 4, 2025<br>Time: 2:00 p.m.<br>Judge: Hon. William J. Lafferty, III<br>Place: United States Bankruptcy Court<br>      Courtroom 220<br>      1300 Clay Street<br>      Oakland, CA 94612 |

**TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE ROMAN CATHOLIC BISHOP OF OAKLAND:**

**PLEASE TAKE NOTICE** that The Roman Catholic Welfare Corporation of Oakland, The Roman Catholic Cemeteries of the Diocese of Oakland, and Adventus (collectively, the "Non-Debtor Defendants"), defendants in the above-captioned adversary proceeding, hereby submit this *Reply Memorandum in Support of the Motion of the Roman Catholic Welfare Corporation of Oakland, the Roman Catholic Cemeteries of the Diocese of Oakland, and Adventus to Dismiss the Official Committee of Unsecured Creditors' First Amended Complaint* (the "Reply") in opposition to the *Omnibus Response of the Official Committee of Unsecured Creditors to (I) Debtor's Motion to Dismiss First Amended Adversary Complaint and (II) the Motion of the Roman Catholic Welfare Corporation of Oakland, the Roman Catholic Cemeteries of the Diocese of Oakland, and Adventus to Dismiss the Official Committee of Unsecured Creditors' First Amended Complaint* (the "Response") [Docket No. 45] and in further support of the *Motion of the Roman Catholic Welfare Corporation of Oakland, the Roman Catholic Cemeteries of the Diocese of Oakland, and Adventus to Dismiss the Official Committee of Unsecured Creditors' First Amended Complaint* (the "Motion"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rules"), as incorporated by Rule 7012 of the Federal Rules of Bankruptcy Procedure, to dismiss the *First Amended Adversary Complaint for Declaratory Relief* (the "Amended Complaint") [Docket No. 35] filed against the Non-Debtor Defendants by the Official Committee of Unsecured Creditors of the Roman Catholic Bishop of Oakland (the "Committee"), on the grounds that the Amended Complaint fails to state a claim upon which relief may be granted.

Document Prepared on Recycled Paper

Dated: June 2, 2025

REBECCA J. WINTHROP
RYAN E. MANNS (*pro hac vice*)
JASON I. BLANCHARD (*pro hac vice*)
NORTON ROSE FULBRIGHT US LLP

By: */s/ Ryan E. Manns*
    RYAN E. MANNS
    *Attorneys for Roman Catholic Welfare Corporation of Oakland, Roman Catholic Cemeteries of the Diocese of Oakland, and Adventus*

DOCUMENT PREPARED ON RECYCLED PAPER

## **TABLE OF CONTENTS**

Page

I. PRELIMINARY STATEMENT ...................................................................................1

II. ARGUMENT..................................................................................................................2

    A. The Court May Properly Consider Documents Incorporated by Reference in the Amended Complaint. ........................................................................................ 2

    B. The Committee's Allegations (Again) Fall Short of the Facts Necessary to State a Claim for Substantive Consolidation (Counts 1, 2, and 3). .................. 3

        1. The Amended Complaint Lacks Sufficient Allegations to Support an Alter Ego Relationship Between the Debtor and the Non-Debtor Defendants Under an Entanglement Theory............................................ 3

        2. The Amended Complaint is Missing Allegations of Actual Creditor Reliance Sufficient to Satisfy the Creditor Reliance Test for Substantive Consolidation. ................................................................................... 5

        3. The Amended Complaint Makes No Attempt to Allege How the Harm to the Non-Debtor Defendants and their Creditors is Outweighed by the Benefits of Substantive Consolidation....................................................... 7

    C. The Committee's Claim for a Determination that RCWC's Property (the School Funds) is Property of the Debtor's Bankruptcy Estate (Count 4) Lacks Factual and Legal Support Sufficient to Withstand Dismissal ......................... 8

III. CONCLUSION................................................................................................................9

DOCUMENT PREPARED ON RECYCLED PAPER

Case: 24-04053  Doc# 48  Filed: 06/02/25  Entered: 06/02/25 15:55:01  Page 4 of 16

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Archdiocese of St. Paul & Minneapolis*,
 553 B.R. 693 (Bankr. D. Minn. 2016) .................................................................................. 7

*In re Aroonsakool*,
 2014 WL 1273696 (B.A.P. 9th Cir. Mar. 28, 2014) ............................................................. 6

*In re Augie/Restivo Baking Co.*,
 860 F.2d 515 (2d Cir. 1988) ................................................................................................. 6

*In re Auto-Train Corp. Inc.*,
 810 F. 2d 270 (D.C. Cir. 1987) ............................................................................................ 6

*In re Bonham*,
 229 F.3d 750 (9th Cir. 2000) ....................................................................................... 5, 6, 7

*In re Brugnara Props. VI*,
 606 B.R. 371, 380-82 (Bankr. N.D. Cal. 2019) ................................................................... 5

*Coto Settlement v. Eisenberg*,
 593 F.3d 1031 (9th Cir. 2010) ............................................................................................. 2

*Daniels-Hall v. National Educ. Ass'n*,
 629 F.3d 992 (9th Cir. 2010) ............................................................................................... 3

*In re Howland*,
 674 F. App'x 482 (6th Cir. 2017) ........................................................................................ 6

*Kelly v. Elec. Arts, Inc.*,
 2015 WL 1967233 (N.D. Cal. Apr. 30, 2015) ..................................................................... 3

*Khoja v. Orexigen Therapeutics, Inc.*,
 889 F.3d 988 (9th Cir. 2018) ............................................................................................... 2

*In re Lodge at Big Sky, LLC*
 (Bankr. D. Mont. 2011) ....................................................................................................... 5

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
 521 F.3d 1097 (9th Cir. 2008) ............................................................................................. 9

*In re Mihranian*,
 937 F.3d 1214 (9th Cir. 2019) ............................................................................................. 8

*In re Owens Corning*,
 419 F.3d (3d Cir. 2005) ....................................................................................................... 6

*In re Prototype Eng'g & Mfg.*,
 2019 WL 9243004 (Bankr. C.D. Cal. Dec. 12, 2019) ......................................................... 8

DOCUMENT PREPARED ON RECYCLED PAPER

*SE Prop. Holdings, LLC v. Stewart*,
    571 B.R. 460 (Bankr. W.D. Okla. 2017) .................................................................... 7

*SEC v. Hickey*,
    322 F.3d 1123 (9th Cir. 2003) ................................................................................... 3

*In re Singh*,
    2019 WL 1231146 (B.A.P. 9th Cir. Mar. 14, 2019) ................................................... 5

*In re SK Foods, LP*,
    499 B.R. 809 (Bankr. E.D. Cal. 2013) .................................................................. 5, 6

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) ..................................................................................... 2

*Walsh v. Kindred Healthcare*,
    798 F. Supp. 2d 1073 (N.D. Cal. 2011) ..................................................................... 4

*Xyience Bev. Co. LLC v. Statewide Bev. Co. Inc.*,
    2015 WL 13333486 (C.D. Cal. Sept. 24, 2015) ......................................................... 4

**Rules and Statutes**

11 U.S.C. § 105(a) ............................................................................................................ 7

Fed. R. Civ. P. 9(b) .......................................................................................................... 4

Fed. R . Civ. P. 12(b)(6) ............................................................................................... 6, 9

DOCUMENT PREPARED
ON RECYCLED PAPER

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  PRELIMINARY STATEMENT

Despite a second round of pleadings and extensive briefing, the Committee continues to evade the core legal issues at stake in its ongoing effort to thrust the Non-Debtor Defendants involuntarily into bankruptcy. Rather than directly respond to the Non-Debtor Defendants' substantive arguments or the contents of the documents the Committee refers to extensively throughout the Amended Complaint, the Committee has instead chosen to rely on broad pronouncements of the applicable law, many of which are untethered to the allegations that have been explicitly framed for the Court. This strategic avoidance is particularly troubling given the Committee's access to extensive discovery in the chapter 11 case. Indeed, what is now before the Court is not a matter of insufficient information, but a calculated litigation tactic aimed at derailing a plan of reorganization the Committee opposes.

The Committee's Amended Complaint is riddled with critical omissions and legal deficiencies, none of which are adequately addressed in its Response. Among the most glaring, the Committee:

- ignores binding Ninth Circuit precedent that permits courts to consider documents quoted or relied upon in a complaint—here, documents that directly contradict the Committee's allegations and thus strip them of any presumption of truth;

- fails to address the Ninth Circuit prerequisite to an alter ego finding—one entity having an actual ownership interest in another entity—likely because the Amended Complaint simply does not allege ownership by the Debtor of the Non-Debtor Defendants, a fatal flaw that alone is sufficient to warrant dismissal;

- offers no response to its lack of facts showing day-to-day control by the Debtor over the Non-Debtor Defendants, relying instead on vague references to historical commingling, and the presence of a few shared officers and directors, shared administrative services, a common webpage, among other allegations of macro-decision making authority vested in the Bishop that fall woefully short of the criteria necessary to make an alter ego showing;

- does not address its failure to plead creditor reliance on the documents it selectively cites, nor does it address case law holding that the existence of a guaranty demonstrates recognition of corporate separateness;

- tacitly omits it failed to allege what harm would befall the Non-Debtor Defendants or their creditors as a result of substantive consolidation, and why such harm would be outweighed by the denial of substantive consolidation; and

DOCUMENT PREPARED ON RECYCLED PAPER

- 1 -

- does not respond to the existence of a clear and unequivocal contract approving the OPF Transfer by RCWC, nor does it identify any California law supporting its claim for declaratory relief other than an inapposite legal doctrine applicable to determining whether a transaction is taxable.

For these reasons, and as further detailed below, the Court should dismiss the Amended Complaint in its entirety.

## II. ARGUMENT

### A. The Court May Properly Consider Documents Incorporated by Reference in the Amended Complaint.

The Committee offers no persuasive reason why the Court should ignore established Ninth Circuit precedent by limiting its consideration to selective portions of documents the Committee refers to throughout the Amended Complaint. *See* Response at pp. 2-3. As set forth in the Non-Debtor Defendants' Motion, the Court may treat documents the Committee refers to extensively, or that form the basis for its claims, as part of the Amended Complaint itself. *See* Motion at p. 11 (citing, *e.g. United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) and *Coto Settlement v. Eisenberg*, 593 F.3d 1031, (9th Cir. 2010)). This prevents unfairness to a defendant when a plaintiff selectively refers to portions of documents not attached to a complaint in order to support a claim that when fully examined "weaken" or "doom" the claim. *See Khoja v. Orexigen Therapeutics, Inc.,* 889 F.3d 988, 1002 (9th Cir. 2018). That is precisely the case here.

Throughout the Amended Complaint, the Committee quotes, cites, and relies on the Debtor's "series of representations to creditors through Appendix A to the Series 2007 Bond Offering Memorandum" to support its substantive consolidation claims. (Compl. ¶¶ 21, 27, 28, 30, 33, 49, 53, 55-66, 120(vi)-(vii), 123, 127 (vi)-(vii), 131(vi)-(vii), 133, 141 (v)-(vi), 143).[1] The Committee takes the same approach with the PNC Credit Agreement (¶¶ 110-112, 120(vi), 124,

---

[1] In several instances, the Committee repeats statements from Appendix A to the Bond Offering Memorandum nearly verbatim, albeit without attribution, then inserts a reference to the Non-Debtor Defendants, where none exists to allege purported control over the Non-Debtor Defendants' operations. *Compare* Compl. ¶ 28 ("The Chancery oversees all accounting, business development and strategic planning, human resources, information systems, property management services, education services and overall operations within the Diocese, including the operations of the Non-Debtor Affiliated Entities") *to* App. at p. A-2 ("All administrative functions of the Diocese are centered in the Chancery office, which oversees all accounting, business development and strategic planning, human resources, information systems, property management services, education services and overall operations of the Diocese").

DOCUMENT PREPARED ON RECYCLED PAPER

131(vi), 134, 141 (v), and 143), an Investment Account Agreement in connection with the OPF Transfer (¶¶ 86-87, 96-103, 148-149) and the Non-Debtor Defendants' Bylaws (¶¶ 32, 40, 43). Therefore, the Court should consider these documents to be incorporated by reference in the Amended Complaint and examine them in their entirety as if they were part of the pleading itself.

Moreover, contrary to the Committee's assertions, the Non-Debtor Defendants are not asking the Court to make factual findings (*see* Response at p. 3), but rather to apply Ninth Circuit law that affords no presumption of truth to allegations contradicted by the documents on which they are based. *See* Motion at p. 11 (citing *Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) and *Kelly v. Elec. Arts, Inc.*, 2015 WL 1967233, at *8 (N.D. Cal. Apr. 30, 2015)). For the reasons set forth in the Motion, the Committee's unfounded allegations that the Bishop held the authority to use and treat the Non-Debtor Defendant's assets as its own when needed, that the Non-Debtor Defendant's assets were available to pay the Debtor's debts, that RCWC did not approve of the OPF Transfer or have authority over its own funds, among others, are contradicted by the very documents on which the Committee relies. Consequently, those allegations are not entitled to a presumption of truth.

### B. The Committee's Allegations (Again) Fall Short of the Facts Necessary to State a Claim for Substantive Consolidation (Counts 1, 2, and 3).

#### 1. *The Amended Complaint Lacks Sufficient Allegations to Support an Alter Ego Relationship Between the Debtor and the Non-Debtor Defendants Under an Entanglement Theory.*

The Committee fails to address critical pleading deficiencies to its alter ego theory of substantive consolidation that the Non-Debtor Defendants identified in the Motion that warrant dismissal.

First, the Committee does not allege an ownership interest by the Debtor in any of the Non-Debtor Defendants, or vice versa. Although courts may consider various factors to determine if an alter ego relationship exists, under Ninth Circuit law, ownership is "a pre-requisite to alter ego liability, and not a mere factor or guideline." Motion at p. 18 (citing *SEC v. Hickey*, 322 F.3d 1123, 1128–29 (9th Cir. 2003)). The Committee makes no attempt to address—let alone distinguish—

DOCUMENT PREPARED ON RECYCLED PAPER

- 3 -

this binding precedent. *See* Response at pp. 4–11. This pleading failure means the Committee's alter ego theory "fails at the first step." Motion at p. 19 (quoting *Xyience Bev. Co. LLC v. Statewide Bev. Co. Inc.*, 2015 WL 13333486, at *7 (C.D. Cal. Sept. 24, 2015)).

<u>Second</u>, the Committee does not address why Rule 9(b)'s heightened pleading requirements do not apply to its alter ego allegations (*see* Motion at p. 17 (collecting cases)), though it relies on a decision that imposes that requirement. *See* Response at p. 4 (citing *Walsh v. Kindred Healthcare*, 798 F. Supp. 2d 1073, 1082 (N.D. Cal. 2011) (applying Rule 9(b) in granting motion to dismiss claim invoking the alter ego doctrine)).

<u>Third</u>, the Committee's reliance on the alleged presence of a handful of alter ego factors does not overcome its failure to allege the Debtor's direct involvement in the Non-Debtor Defendants' day-to-day decision making or internal affairs. *See* Response at pp. 4–11. As explained in the Motion, the presence of shared officers and directors sporadically over a 60 year period, a shared business location, shared administrative functions, and conclusory allegations of historical commingling (only with respect to RCWC and RCC, not Adventus), are insufficient to support an alter ego relationship under California law. *See* Motion, at pp. 19-21 (collecting cases).

<u>Fourth</u>, the Committee does not tie the injustice it alleges creditors will suffer if alter ego liability is not imposed to any alleged conduct of the Debtor and the Non-Debtor Defendants. *See* Response at p. 11 (claiming that the Non-Debtor Defendants, "hold more than $185 million in cash and investments" but that the "Debtor is using the Chapter 11 Case to obtain a litigation advantage over Survivors by placing the Property beyond their reach, but still within the Debtor's reach and control"). As explained in the Motion, the fraud or injustice element of alter ego is not met absent non-conclusory allegations of a causal relationship between an abuse of the corporate form and the resulting harm, for example, through specific allegations of diverting assets to a corporate shell to evade creditors. *See* Motion at pp. 23-24 (collecting cases). The alleged harm resulting from the Committee's inability to reach assets of a target entity is simply inadequate. That harm will always be present when one affiliate files for bankruptcy but another does not—a point made in the Motion but unaddressed in the Response—and thus cannot be the type of injustice sufficient to trigger alter ego liability.

DOCUMENT PREPARED ON RECYCLED PAPER

Furthermore, the Committee's weak allegations of alter ego stand in direct contrast to the case law on which it relies. *See* Response at p. 4, 10. For example, in *SK Foods, LP*, the bankruptcy court found numerous indicia of alter ego, including 100% ownership by the debtor's principal and his various trusts of the corporate defendants, undercapitalization of the corporate defendants, undocumented loans dispensed at the debtor's discretion, related party transactions that resulted in the diversion of the debtor's assets without any supporting explanation, and commingling of assets, liabilities, and finances of the debtor with the corporate defendants. *See* 499 B.R. at 836-37. Likewise, in *Brugnara Properties*, the court's determination of an alter ego relationship was supported by the admission of commingling funds, shared bank accounts between the alleged alter egos, large cash withdrawals by the debtor from the target's bank accounts, no observation of corporate formalities, and the lack of any meaningful economic activity by the Debtor for nearly 10 years. 606 B.R. 371, 380-82 (Bankr. N.D. Cal. 2019). In addition, in *Singh*, the court's alter ego finding was predicated on the existence of a Ponzi scheme. 2019 WL 1231146, at *7 (B.A.P. 9th Cir. Mar. 14, 2019). Nothing like the facts in *SK Foods*, *Brugnara*, or *Singh* are alleged in the Amended Complaint.

Finally, the Ninth Circuit permits substantive consolidation under an entanglement theory only where "the time and expense necessary even to attempt to unscramble [the debtors' affairs] is so substantial as to threaten the realization of any net assets for all the creditors or where no accurate identification and allocation of assets is possible." Motion at p. 16 (quoting *In re Bonham*, 229 F.3d 750, 765 (9th Cir. 2000)). The Non-Debtor Defendants raised this requirement in the Motion because the Committee's allegations do not come close to reaching this high standard, *see* Motion at p. 16, but the Response said nothing about it.

        2.    *The Amended Complaint is Missing Allegations of Actual Creditor Reliance Sufficient to Satisfy the Creditor Reliance Test for Substantive Consolidation.*

To sustain a claim for substantive consolidation under a creditor reliance theory, a plaintiff must allege **creditors** believed the target entities were one and the same and relied on the entities' singular identity in extending credit. *See* Motion at pp. 14-16 (collecting cases); *accord In re Lodge*

DOCUMENT PREPARED ON RECYCLED PAPER

*at Big Sky, LLC* (Bankr. D. Mont. 2011) (considering the creditor's actual perceptions of separateness). No such allegations have been made by the Committee or any of the creditors that the Committee represents. Instead, the Committee merely points to alleged statements made by the **Debtor** in the Bond Offering Memorandum from nearly two decades ago and its accompanying appendix, the Debtor's website, and a single provision in the PNC Credit Agreement, all with the hope that the Court will draw the implausible inference that creditors believed or were confused into thinking the Non-Debtor Defendants were the same as the Debtor in extending millions of dollars of credit. Response at pp. 12-13. None of those documents refer to what creditors believed or describe any confusion.

In addition, the Committee ignores both the presence of the Non-Debtor Defendants' guaranty of the PNC Bank Debt and the law that treats a guaranty as a reflection of corporate separateness. *See id.* at pp. 11-13. As explained in the Motion, courts hold that a corporate guaranty negates an inference that creditors perceived an entity targeted for substantive consolidation to be one and the same as the debtor. *See* Motion at p. 14 (citing *In re Owens Corning*, 419 F.3d, 195 212-13 (3d Cir. 2005) and *In re Howland*, 674 F. App'x 482, 489 (6th Cir. 2017). The Response fails to address both the caselaw on guaranties and the practical impact of a guaranty (i.e., corporate separateness).

The Committee's reference to shifting evidentiary burdens is misplaced on a Rule 12(b)(6) motion to dismiss. *See* Response at p. 12 (citing *In re Aroonsakool*, 2014 WL 1273696 (B.A.P. 9th Cir. Mar. 28, 2014) (affirming bankruptcy court's decision to grant a motion for substantive consolidation based on an evidentiary presentation) and *SK Foods*, 499 B.R. at 834 (granting motion for substantive consolidation on default following the submission of evidence).[2] For the reasons stated here and in the Motion (*see* pp. 13-16), the Committee has failed to carry its burden to adequately plead factual allegations sufficient to state a claim for substantive consolidation under

---

[2] The Committee also cites to the Ninth Circuit's decision in *In re Bonham* in support of this proposition. However, in *Bonham*, the Ninth Circuit merely discussed the D.C. Circuit's three-part test for substantive consolidation in *In re Auto-Train Corp. Inc.*, 810 F. 2d 270, 276 (D.C. Cir. 1987) and the related burden shifting framework adopted by that court. 299 F.3d 750, 766 (9th Cir. 2000). The Ninth Circuit declined to adopt the so-called *Auto-Train* test, instead choosing to follow the Second Circuit's two-part test in *In re Augie/Restivo Baking Co.*, 860 F.2d 515, 518 (2d Cir. 1988). In any event, *Bonham* was decided on a full evidentiary record. 229 F.3d at 760.

DOCUMENT PREPARED ON RECYCLED PAPER

- 6 -

a creditor reliance theory. Whether an evidentiary presumption may apply, is therefore, of no consequence.

Finally, the Committee does not address why it may rely on the creditor reliance test to substantively consolidate the Non-Debtor Defendants under the Court's prior ruling dismissing the previous version of the Committee's complaint. *See Order After Hearing on Motions to Dismiss* [Docket No. 30] at p. 7 ("the Committee is granted leave to amend to articulate any applicable non-bankruptcy law that would have the desired effect of substantive consolidation without overriding the explicit prohibitions of 303(a)"). The creditor reliance test for substantive consolidation is not based on any applicable state law, but section 105(a) of the Bankruptcy Code. *See id.* at p. 4; *Bonham*, 229 F.3d at 764. As non-profit entities, the Non-Debtor Defendants may not be forced into the equivalent of an involuntary bankruptcy through substantive consolidation because doing so would violate the Bankruptcy Code's express prohibition on involuntary bankruptcies against non-profit entities. *See* Motion at p. 13, n.12 (incorporating by reference the arguments set forth in the Non-Debtor Defendants' briefing seeking dismissal of the Committee's original complaint at Docket Nos. 9 and 25).

### 3. *The Amended Complaint Makes No Attempt to Allege How the Harm to the Non-Debtor Defendants and their Creditors is Outweighed by the Benefits of Substantive Consolidation.*

Citing only to the portions of the Amended Complaint that allege the purported benefits of substantive consolidation, the Committee tacitly admits it has failed to allege how those benefits would outweigh the harm to the Non-Debtor Defendants and their creditors as the targets of substantive consolidation. *See* Response at p. 14. As the Ninth Circuit explained, the "harm" to be measured "is the harm to the entity which is being substantively consolidated." *Bonham*, 229 F.3d at 767. The failure to plead this element of substantive consolidation is grounds for dismissal. *See* Motion at p. 24 (citing *In re Archdiocese of St. Paul & Minneapolis*, 553 B.R. 693, 704 (Bankr. D. Minn. 2016) (dismissing complaint for substantive consolidation on several grounds, including the failure to sufficiently allege how the benefits of consolidation would outweigh the harm to the debtor's and the targets' creditors); *see also SE Prop. Holdings, LLC v. Stewart (In re Stewart)*,

571 B.R. 460, 471 (Bankr. W.D. Okla. 2017) (granting motion to dismiss complaint for substantive consolidation for lack of allegations on why or how the creditors of the non-debtor entities targeted for consolidation would be harmed or benefit as a result). This is particularly the case when the Committee has failed to provide notice (or allege it has in fact provided such notice) to the Non-Debtor Defendants' creditors of the potential consolidation. *See In re Mihranian*, 937 F.3d 1214, 1217-18 (9th Cir. 2019) (holding that a party seeking substantive consolidation must provide notice to the creditors of a putative consolidated non-debtor); *In re Prototype Eng'g & Mfg.*, 2019 WL 9243004, at *1 (Bankr. C.D. Cal. Dec. 12, 2019) (granting motion to dismiss substantive consolidation for failure to give notice to the non-debtor defendants' creditors of the claim for substantive consolidation).

The Committee nevertheless irresponsibly argues that "consolidation will pose no harm" to the Non-Debtor Defendants or their creditors because "they operate as one and the same with Debtor" and "are seeking releases under the Debtor's proposed plan." But these allegations are found nowhere in the Amended Complaint. In fact, in the Amended Complaint, the Committee alleges that each of the Non-Debtor Defendants' financial statements show ownership of property, consisting of cash, investments, receivables, equipment, and real property. *See* Compl. ¶¶ 35, 41, 45. And the Committee alleges that each Non-Debtor Defendant has distinct operations: (i) RCWC in its oversight of 32 elementary schools and high schools within the Diocese (¶ 12); (ii) RCC in its operation and administration of six diocesan cemeteries, five mortuaries, two mausoleums, and one crematory (¶ 35); and (iii) Adventus in its ownership of real property (¶ 42). The only plausible inference from these allegations is that each Non-Debtor Defendant has its own creditors, for example vendors that provide services at the schools, cemeteries, and other properties, with their own interests that may not align with those of the Debtor's creditors, particularly when no claims for sexual abuse have been brought against RCC and Adventus.

        C.    <u>The Committee's Claim for a Determination that RCWC's Property (the School Funds) is Property of the Debtor's Bankruptcy Estate (Count 4) Lacks Factual and Legal Support Sufficient to Withstand Dismissal.</u>

The Committee's claim for declaratory relief is predicated on an inaccurate narrative of the

DOCUMENT PREPARED ON RECYCLED PAPER

Debtor's transfer of funds belonging to the RCWC to OPF without RCWC's permission, ███████████████████████████████████████████. Compl. ¶¶ 87, 96-103, 147-149. However, as explained in the Motion, one of those agreements directly contradict those allegations. In fact, ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. Motion at p. 25. In its Response, the Committee does not address this glaring disparity between the allegations it has made and the contents of the underlying document.

Moreover, the Committee does not identify a claim under California law that gives a party the right to assert an equitable interest in property it acknowledges belongs to another. Instead, the Committee devises a claim out of whole cloth based on generalized indicia of ownership, and inapposite authority on the proper tax treatment of dispositions of property. *See* Response at p. 15. Neither gives rise to a cognizable claim under California law. Because the Committee's claim for declaratory relief lacks a cognizable legal theory, it must be dismissed. *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (dismissal under Rule 12(b)(6) is appropriate if "the complaint lacks a cognizable legal theory" or "sufficient facts to support a cognizable legal theory.").

### III. CONCLUSION

For the foregoing reasons, the Non-Debtor Defendants respectfully request that their Motion to dismiss the Amended Complaint for failure to state a claim for relief under Rule 12(b)(6) be granted with respect to all of the claims asserted in the Amended Complaint.

DOCUMENT PREPARED ON RECYCLED PAPER

Dated: June 2, 2025

REBECCA J. WINTHROP
RYAN E. MANNS (*pro hac vice*)
JAMES V. LEITO (*pro hac vice*)
JASON I. BLANCHARD (*pro hac vice*)
NORTON ROSE FULBRIGHT US LLP

By: /s/ *Ryan E. Manns*
　　RYAN E. MANNS

*Attorneys for Roman Catholic Welfare Corporation of Oakland, Roman Catholic Cemeteries of the Diocese of Oakland, and Adventus*

DOCUMENT PREPARED ON RECYCLED PAPER

- 10 -