**Exhibit A**

1            UNITED STATES BANKRUPTCY COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3               -oOo-

4   In Re:                 ) Case No. 23-40523
                           ) Chapter 11
5   THE ROMAN CATHOLIC BISHOP OF   )
   OAKLAND                    ) Oakland, California
6                              ) Wednesday, July 16, 2025
                  Debtor.   ) 1:00 PM
7   _____ )

8                        1. MOTION FOR RELIEF FROM
                       STAY FILED BY OFFICIAL
9                        COMMITTEE OF UNSECURED
                       CREDITORS OF THE ROMAN
10                       CATHOLIC BISHOP OF OAKLAND
                       (DOC 2093)

11                      2. MOTION OF THE OFFICIAL
                       COMMITTEE OF UNSECURED
12                       CREDITORS OF THE ROMAN
                       CATHOLIC BISHOP OF OAKLAND
13                      FOR AN ORDER ENFORCING THE
                       INTERIM COMPENSATION ORDER,
14                      FILED BY OFFICIAL COMMITTEE
                       OF UNSECURED CREDITORS OF THE
15                      ROMAN CATHOLIC BISHOP OF
                       OAKLAND (DOC 2132) - ORDER
16                      SHORTENING TIME SIGNED
                       7/14/25

17

18                      3. DEBTOR'S THIRD MOTION FOR
                       ORDER APPROVING INSURANCE
19                      PREMIUM FINANCE AND SECURITY
                       AGREEMENT AND GRANTING POST-
20                      PETITION SECURITY INTEREST,
                       FILED BY THE ROMAN CATHOLIC
21                      BISHOP OF OAKLAND  (DOC 2123)
                       - ORDER SHORTENING TIME
                       SIGNED 7/14/25

22

23

24

25

1                             ADV#: 24-04051

                             THE OFFICIAL COMMITTEE OF

2                             UNSECURED CREDITORS OF THE

                             ROMAN CATHOLIC BISHOP OF

3                             OAKLAND v. THE ROMAN CATHOLIC

                             BISHOP OF OAKLAND, ET AL.

4

                             STATUS CONFERENCE

5

                             ADV#: 24-04053

6                             THE OFFICIAL COMMITTEE OF

                             UNSECURED CREDITORS OF THE

7                             ROMAN CATHOLIC BISHOP OF

                             OAKLAND v. THE ROMAN CATHOLIC

8                             BISHOP OF OAKLAND, ET AL.

9                             STATUS CONFERENCE

10                   TRANSCRIPT OF PROCEEDINGS

              BEFORE THE HONORABLE WILLIAM J. LAFFERTY

11              UNITED STATES BANKRUPTCY JUDGE

12   APPEARANCES (All present by video or telephone):

    For the Debtor:        SHANE MOSES, ESQ.

13                      Foley & Lardner LLP

                          555 California Street

14                     Suite 1700

                          San Francisco, CA 94104

15                     (415)434-4507

16                     ANN MARIE UETZ, ESQ.

                          Foley & Lardner LLP

17                     500 Woodward Avenue

                          Suite 2700

18                     Detroit, MI 48226

                          (313)234-7100

19

20   For Office of the U.S.   JASON BLUMBERG, ESQ.

    Trustee:              United States Department of

21                     Justice

                          501 I Street

                          Suite 7-500

22                     Sacramento, CA 95814

                          (916)930-2100

23

24

25

Case: 24-04053   Doc# 58-1   Filed: 08/08/25   Entered: 08/08/25 14:34:20   Page 3 of 26

```
 1  For Official Committee of    BRENT WEISENBERG, ESQ.
    Unsecured Creditors:         JEFFREY PROL, ESQ.
 2                               Lowenstein Sandler LLP
                                 One Lowenstein Drive
 3                               Roseland, NJ 07068
                                 (973)597-6120
 4
                                 GABRIELLE ALBERT, ESQ.
 5                               Keller Benvenutti Kim LLP
                                 650 California Street
 6                               Suite 1900
                                 San Francisco, CA 94108
 7                               (415)496-6723

 8                               TIMOTHY W. BURNS, ESQ.
                                 (TELEPHONICALLY)
 9                               Burns Bair LLP
                                 10 E. Doty Street
10                               Suite 600
                                 Madison, WI 53703
11                               (608)286-2808

12                               MICHAEL A. KAPLAN, ESQ.
                                 (TELEPHONICALLY)
13                               Lowenstein Sandler LLP
                                 1251 Avenue of the Americas
14                               New York, NY 10020
                                 (973)597-2302
15
    For Pacific Insurers:        JUSTINE DANIELS, ESQ.
16                               DANNY HIRSCH, ESQ.
                                 O'Melveny & Myers LLP
17                               400 South Hope Street
                                 18th Floor
18                               Los Angeles, CA 90071
                                 (213)430-7657
19
    For London Market insurers: JEFFREY D. KAHANE, ESQ.
20                               Skarzynski Marick & Black LLP
                                 US Bank Tower
21                               633 West Fifth Street, 26th Floor
                                 Los Angeles, CA 90071
22                               (213) 721-0653

23

24

25
```

**eScribers, LLC**

```
 1  For Westport Insurance      TODD C. JACOBS, ESQ.
    Corporation:                (TELEPHONICALLY)
 2                              Parker, Hudson, Rainer & Dobbs LLP
                                Two North Riverside Plaza
 3                              Suite 1850
                                Chicago, IL 60606
 4                              (312)477-3306

 5                              BLAISE S. CURET, ESQ.
                                (TELEPHONICALLY)
 6                              Sinnott, Puebla, Campagne & Curet,
                                APLC
 7                              515 S. Figueroa Street,
                                Suite 1470
 8                              Los Angeles, CA 90071
                                (213) 996-4200
 9
    For London Market insurers: JEFFREY D. KAHANE, ESQ.
10                              Skarzynski Marick & Black LLP
                                US Bank Tower
11                              633 West Fifth Street
                                26th Floor
12                              Los Angeles, CA 90071
                                (213) 721-0653
13
    For RCC, RCWC, OPF, and     RYAN E. MANNS, ESQ.
14  Adventus:                   (TELEPHONICALLY)
                                Norton Rose Fulbright US LLP
15                              2200 Ross Avenue
                                Suite 3600
16                              Dallas, TX 75201
                                (214) 855-8304
17
    For Continental Insurance   MIRANDA H. TURNER, ESQ.
18  Company:                    (TELEPHONICALLY)
                                Plevin & Turner LLP
19                              1701 Pennsylvania Ave., N.W.
                                Suite 200
20                              Washington, DC 20006
                                (202) 580-6640
21

22

23

24

25
```

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18   Court Recorder:          DAWANA CHAMBERS
19                         United States Bankruptcy Court
                         1300 Clay Street
20                         Oakland, CA 94612

21   Transcriber:             SHARONA SHAPIRO
                         eScribers, LLC
22                         7227 N. 16th Street
                         Suite #207
23                         Phoenix, AZ 85020
                         (800) 257-0885
24

25   Proceedings recorded by electronic sound recording;
   transcript provided by transcription service.

1    Thank you.

2         Anything other than 53?  Can we take a minute for a
3    convenience break before we've been going another hour and a
4    half here?  All right.  Come back on --

5         Sorry?

6         MR. PROL:  Sounds like a great plan.

7         THE COURT:  Okay.  Thank you.

8      (Recess from 3:59 p.m., until 4:08 p.m.)

9         THE COURT:  Okay.  Please be seated.  We're going to
10   turn to the 053 adversary proceeding, and I intend to give you
11   an oral ruling, although it's a relatively lengthy one because
12   it's -- although I'm calling it an oral ruling, it's scripted,
13   let's say.  So this is in the adversarial proceeding number 24-
14   04053.  And I intend to give you here my oral findings of fact
15   and conclusions of law pursuant to FRCP 7052.

16        So before the Court are two motions to dismiss the
17   first amended adversary complaint, which I'll refer to as the
18   amended complaint, of the official committee of unsecured
19   creditors, the Roman Catholic Bishop of Oakland.  The committee
20   seeks in the amended complaints, one, substantive consolidation
21   of the debtor and the Roman Catholic Welfare Corporation of
22   Oakland, substantive consolidation of the debtor and the Roman
23   Catholic Cemeteries of the Diocese of Oakland, substantive
24   consolidation of the debtor and Adventus, and a judicial
25   determination that the school funds are property of the

Case: 24-04053   Doc# 58-1   Filed: 08/08/25   Entered: 08/08/25 14:34:20   Page 7 of
26

1  debtor's bankruptcy estate under Section 541 of Chapter 11 and

2  Title 11 United States Code, which is the Bankruptcy Code.

3  On May 23, 2025, the debtor filed a motion to dismiss

4  the amended complaint pursuant to Federal Rule of Civil

5  Procedure 12(b)(6). The same day, RCWC, RCC, and Adventus,

6  collectively the nondebtor entities, submitted a motion to

7  dismiss the amended complaint pursuant to FRCP 12(6), as

8  incorporated in the Bankruptcy Rules. For the reasons

9  discussed below, I'm going to grant both motions to dismiss.

10  As background, the committee asserts that these

11  matters are core under 28 U.S.C. 157(b)(2)(A) and (O), and I

12  will note that those are generally the most -- those are the

13  most generic invocations of core and therefore my judicial

14  power. But nobody has raised an issue with that, so I don't

15  think it's something we need to spend a whole lot of time on.

16  An introduction and a little bit of context.

17  On December 11th, 2024, the committee filed an

18  adversary complaint, the original complaint against the debtor

19  and the affiliated nondebtor entities. The committee alleged

20  that the diocese exercised such control over the nondebtor

21  entities that any distinction among them served only to shield

22  assets from the estate and its creditors. Count I of the

23  original adversary complaint sought declaratory judgment that

24  the debtor owned all legal and equitable interests in the

25  nondebtor entities' assets, while Count II sought to

Case: 24-04053   Doc# 58-1   Filed: 08/08/25   Entered: 08/08/25 14:34:20   Page 8 of
26

substantively consolidate the debtor and the nondebtor entities
based on their alleged entanglement.  The debtor and the
nondebtor entities each moved to dismiss the original complaint
under Federal Rule of Civil Procedure 12(b)(6), arguing that
the relief sought was either unauthorized under Section 105 of
the Code or was insufficiently pled.

Upon review, the Court concluded at the time that
while consolidation may be available where supported by
applicable nonbankruptcy law, Count II as pled failed to
articulate a clear legal theory, such as alter ego, that could
justify consolidation without contravening Section 303(a) of
the Bankruptcy Code, which prohibits involuntary relief against
nonprofits.  The Court recognized that the case of Law v.
Siegel, 571 U.S. 415 (2014), doesn't foreclose equitable relief
grounded in state law, provided that such relief does not
override explicit statutory prohibitions in the Bankruptcy
Code.

However, because the committee's complaint did not
sufficiently frame its claim under cognizable nonbankruptcy
doctrine, the Court declined to assess the adequacy of the
underlying factual allegations at that time.  Accordingly, the
Court granted the motion to dismiss Count II the original
complaint with leave to amend so that the committee could more
precisely set forth the legal basis for the relief that it
sought.

1       On May 6th, 2025, the committee submitted an amended
2  adversary complaint, again, seeking substantive consolidation
3  of the debtor in each of the three nondefendant, nondebtor
4  entities.  The committee asserts that it has adequately stated
5  a claim for substantive consolidation under the case In re:
6  Bonham, which is 229 F.3d 750, 756, Ninth Circuit case from
7  2000, by pleading facts which satisfy, one, the entanglement
8  test through a state law supported alter ego theory of
9  liability, and two, the creditor expectation test, i.e. the
10 creditors reasonably relied on the combined credit of the
11 debtor and the nondebtor entities.  In addition to the three
12 counts for substantive consolidation, the committee seeks a
13 declaration that certain school funds are property of the
14 bankruptcy estate pursuant to Section 541 of the Bankruptcy
15 Code.
16      In its motion to dismiss the amended complaint
17 pursuant to Rule 12(b)(6), the debtor argues that the
18 committee's claims in Counts I through III fail as a matter of
19 law.  The motion to dismiss posits that articulation of an
20 alter ego theory is insufficient -- I'm sorry, the committee's
21 articulation of an alter ego theory is insufficient to support
22 substantive consolidation, as the amended complaint does not
23 plead facts that establish the degree of unity of interest and
24 resulting injustice required to show entanglement and pierce
25 the corporate veil, and the two, reliance on the creditor

Case: 24-04053   Doc# 58-1   Filed: 08/08/25   Entered: 08/08/25 14:34:20   Page 10
of 26

1  expectations test to support substantive consolidation is

2  similarly inappropriate and runs afoul of Law v. Siegel, as

3  previously cited in this Court's prior ruling, as the test is

4  "a creature of Section 105 of the Bankruptcy Code", unlike the

5  state law alter ego theory.

6      Now, here I'm going to pause for a second. And I'm

7  not trying to be confusing because I think there are two things

8  going on at the same time here. The debtor and the nondebtor

9  entities both basically argued that the committee's approach in

10  basically relying on some aspect of substantive consolidation

11  and tests applicable thereto ran afoul of the Court's prior

12  order. I think there are some respects in which that's true.

13  I was concerned about the normal articulation of substantive

14  consolidation, that it was not going to be feasible as usually

15  presented in light of the Law v. Siegel issues that have to do

16  with the inability to force a nonprofit into a bankruptcy.

17      Having said that, all of this is a little bit loosey

18  goosey because the ultimate remedy, one way or the other, is

19  recognized and is called substantive consolidation. So much

20  was made from the podium by the debtor's counsel to the effect

21  that the committee was really arguing issues that have already

22  been decided. There's an element of that that I think is

23  correct. But the parties, notwithstanding that, argued their

24  way through the basic test, the creditor expectation test, and

25  the entanglement test. And because the parties spent a lot of

1    their time doing that, I intend to structure this description

2    of my ruling with reference to those doctrines and the way the

3    parties approached it, alongside the idea that some of this was

4    simply foreclosed by the prior ruling.

5             So turning to Count IV, the debtor maintains that the

6    committee's request for declaratory relief concerning the

7    school funds likewise fails to state a claim and warrants

8    dismissal under Rule 12(b)(6).  The debtor characterizes the

9    request as a thinly veiled attempt at substantive consolidation

10   through declaratory judgment, relying solely on generalized

11   assertions of control over the school funds without any

12   supporting facts.  The nondebtors' motion to dismiss similarly

13   asserts that the committee has failed adequately to allege the

14   requirements of alter ego, one, the requisite entanglement of

15   the debtor and nondebtor entities, and two, the creditors

16   treated the defendants as a single economic unit, or three, any

17   resulting fraud or injustice, which are referred to, again,

18   colloquially, as the Bonham factors, which again is part of our

19   confusion here, I think.  The motion also contends that

20   allegations contained in Count IV arrest on conclusory

21   assertions of control over school funds without actual support

22   of a cognizable claim for relief.

23            So turning to the legal standard under 12(b)(6),

24   failure to state a claim.  Under Federal Rule of Civil

25   Procedure 12(b)(6), as incorporated in the Federal Rules of

Case: 24-04053    Doc# 58-1    Filed: 08/08/25    Entered: 08/08/25 14:34:20    Page 12
of 26

1    Bankruptcy Procedure at 7012(b)(6), a complaint must be

2    dismissed if it fails to state a claim upon which relief can be

3    granted.  The test is whether a complaint contains sufficient

4    factual matter to state a claim for relief that is plausible on

5    its face, and that's obviously Ashcroft v. Iqbal, 556 U.S. 662

6    (2009).

7           The claim is plausible when the plaintiff pleads

8    factual content that allows the court to draw a reasonable

9    inference that the defendant is liable for the unlawful acts

10   alleged.  Conclusory statements without factual support are

11   insufficient to meet the plausibility standard.  When a

12   defendant has moved to dismiss, the court must take all of the

13   plaintiff's allegations as true and draw a reasonable

14   inferences in its favor.  That's Miller Yacht Sales, Inc. v.

15   Sandy Lane Hotel Company Limited, 496 F.3d 93 (9th Cir. 2004).

16          Substantive consolidation.  Substantive consolidation

17   is a remedy generally within a bankruptcy court's equitable

18   powers under Section 105 of the Bankruptcy Code.  Substantive

19   consolidation is not provided for specifically in the

20   Bankruptcy Code.  Rather, it's a creation of state law.  While

21   there are accordingly no express statutory requirements for the

22   imposition of substantive consolidation case law, as generally

23   stated, the court should consider whether, one, there is a

24   disregard for corporate formalities and commingling of assets

25   between the subject entities and two, what are the benefits of

1    substantive consolidation outweigh its costs.  Courts ought to
2    make this decision on a case-by-case basis, with the
3    overarching goal of ensuring fairness to all creditors.  And
4    again, that's the Bonham case.

5            Substantive consolidation requires the creditors of
6    one entity to share equally with the creditors of a potentially
7    less solvent entity, therefore possibly unfairly disadvantaging
8    some creditors' recovery.  Therefore, there's also broad
9    consensus that substantive consolidation is an extraordinary
10   remedy to be invoked sparingly.  That's In re: Archdiocese of
11   Saint Paul and Minneapolis, 888 F.3d 944, and that's Eighth
12   Circuit, 2018.

13           Circuits differ somewhat as to the precise test to
14   determine the appropriateness of substantive consolidation, but
15   there's an agreement that the determination must be made on a
16   case-by-case basis, since the bar for granting the remedy is
17   fairly high.  In re: Giller, which is a case 962 F.2d 796 (8th
18   Cir. 1992).  The United States Court of Appeals affirmed the
19   bankruptcy court's decision to substantively consolidate six
20   Chapter 11 debtors, all of which shared a common sole or
21   majority shareholder because it found the equitable remedy of
22   substantive consolidation to be the only hope of recovery for
23   unsecured creditors.

24           Further, In re: Bonham, the U.S. Court of Appeals
25   allowed the substantive consolidation of debtor and nondebtor

1   entities after finding the debtor commingled personal assets

2   with those of nondebtor entities and failed to maintain

3   corporate distinctions between the debtor and the nondebtor

4   entities.

5          The primary purpose of substantive consolidation is to

6   ensure the equitable treatment of all creditors, and that's In

7   re: Central European Industrial Development Company, LLC, 288

8   B.R. 572.  And that's a bankruptcy case from N.D. Cal.

9   Substantive consolidation does not require a finding of alter

10  ego per se on its own under 105, as it is a separate doctrine

11  that focuses on the equitable treatment of creditors and the

12  practical realities of the entity's operations.  And that's In

13  re: Parkway Calabasas Limited, 89 B.R. 832.  And that's a

14  bankruptcy case from C.D. Cal.

15         Having said that, it's absolutely clear that under Law

16  v. Siegel and I think the prohibitions on using a bankruptcy

17  doctrine to contravene a bankruptcy statute.  And in fact, you

18  really need to have more than simply the normal substantive

19  consolidation showing, which is why we had a discussion last

20  time we were here about putting this through the alter ego

21  prism, and that's really going to be the way that I look at

22  this.

23         Having said that, the entanglement test.  Number one,

24  the entanglement test examines whether the affairs of the

25  debtor are so entangled that consolidation will benefit all

1    creditors.  And that's In re: Owner Management Service, LLC

2    Trustee Corps, 530 B.R. 711.  This test is satisfied at the

3    time and expense necessary to unscramble the debtor's affairs

4    are so substantial that they threaten the realization of any

5    net assets for all creditors or if no accurate identification

6    and allocation of assets is possible.  Entanglement typically

7    involves cases where there has been a commingling of assets

8    between entities.

9          Alter ego.  The alter ego doctrine is a state law

10    remedy that is certainly viable under California law and that

11    allows courts to pierce the corporate veil and hold the parent

12    entity liable for the actions of its subsidiary.  To

13    demonstrate that the parent and subsidiary are not really

14    separate entities and therefore satisfy the alter ego standard,

15    a plaintiff must make out a prima facie case, one, that there

16    is no such -- I'm sorry, that there is such unity of interest

17    in ownership that the separate personalities of the two

18    entities no longer exist, and two, that failure to disregard

19    their separate identities would result in fraud or injustice.

20    And that's Doe v. Unocal Corp., 248 F.3d 915, Ninth Circuit

21    case 2001.

22          Unity of interests is suggested by the commingling of

23    funds and other assets, the holding up by one entity that is

24    liable for the debts of the other, identical equitable

25    ownership of the entities, use of the same offices and

Case: 24-04053   Doc# 58-1   Filed: 08/08/25   Entered: 08/08/25 14:34:20   Page 16
of 26

employees, the use of one of these a mere shell or conduit for the affairs of the other, and that's Roman Catholic Archbishop v. Superior Court, 15 Cal.App.3d 405 (Cal. Ct. App. 1971). This doctrine can be applied to nonprofit religious entities if there is evidence of control and domination by the parent organization and if the separate corporate existence is used to perpetuate fraud or injustice.  And that's Prompt Staffing, Inc. v. United States, 321 F.Supp.3d 1157 (C.D. Cal. 2018).

The creditor expectations test considers whether creditors dealt with the entities as a single economic unit and did not rely on their separate identity in extending credit, and that's out of the Bonham case.  The test is based on the notion that lenders structured their loans according to their expectations regarding the borrower and do not ordinarily anticipate having the assets of a more sound company available in case of insolvency or having the creditors of a less sound debtor compete for the borrower's assets.

So putting all this through the alter ego machine and substantive consolidation machine, if you will, the analysis, the committee argues that it's adequately stated a claim for substantive consolidation by asserting facts that support, one, an alter ego theory to satisfy the entanglement prong of the test, and two, a claim that creditors reasonably relied on the combined credit of the debtor and nondebtor entities to satisfy the creditor expectation test.  And again, that's a reference

Case: 24-04053    Doc# 58-1    Filed: 08/08/25    Entered: 08/08/25 14:34:20    Page 17
of 26

1    to Bonham.

2          The debtor responds that the facts do not establish

3    either the alter -- either the degree of overlap and control

4    necessary to satisfy the alter ego entanglement prong, nor to

5    satisfy the creditor expectation test.  In addition to the

6    alleged inadequacy of the facts provided, the debtor further

7    argues that the committee cannot rely on the creditor

8    expectation test to support its claims because the test is a

9    creature of Section 105 of the Bankruptcy Code.  So my prior

10   comments stand.  Unlike the state alter ego theory and reliance

11   on it contravenes Law v. Siegel and this Court's prior ruling

12   regarding substantive consolidation of a nonprofit, nondebtor

13   entity under Section 105.

14          So diving a bit into the alter ego test and whether

15   it's satisfied here, while the committee presents considerable

16   evidence of operational and structural overlap between the

17   debtor and nondebtor entities, even taken together in a light

18   most favorable to the committee, in the Court's view, such

19   facts simply fail to satisfy the high standard required to

20   establish alter ego liability.  To pierce the corporate veil

21   under an alter ego theory, the claimant must, again,

22   demonstrate a unity of interest and ownership, such that

23   separate personalities of the entities no longer exist, and

24   two, that the failure to disregard the corporate form would

25   result in fraud or injustice.  Again, Doe v. Unocal.  The Court

Case: 24-04053   Doc# 58-1   Filed: 08/08/25   Entered: 08/08/25 14:34:20   Page 18
of 26

1    agrees with the debtor and the nondebtor entities that no such

2    demonstration -- no such adequate demonstration has been made

3    here.

4           The committee cites seven factors to support its claim

5    that the defendants operated as a single enterprise.  Factors

6    are a failure to maintain arm's length relationships among the

7    related entities, shared officers and directors, shared

8    business offices and addresses, shared employees, comingling of

9    funds or other assets, one entity holding out that it's liable

10   for the debts of the other, and treatment by one entity of the

11   other's assets as its own.  While such factors may be relevant

12   to the unity of interest prong, courts in the Ninth Circuit

13   require more than organizational similarity or interrelated

14   operations.

15          The facts must be, as taken together, cumulatively

16   show that the parent controls a subsidiary with such

17   consistency and severity that the latter is rendered a mere

18   instrumentality of the former.  And that's Ranza v. Nike, Inc.

19   793 F.3d 1059, Ninth Circuit case from 2015.  Plaintiff must

20   show "a total domination of finances, policy, and business

21   practices", such that the subsidiary has "no separate mind,

22   will, or existence of its own".  And that's the Unocal case,

23   again 248 F.3d.

24          Here, the facts provided do not allege that level of

25   pervasive day-to-day control required to show that the

Case: 24-04053   Doc# 58-1   Filed: 08/08/25   Entered: 08/08/25 14:34:20   Page 19
of 26

1    nondebtor entities functioned as a mere instrumentality of the

2    debtor.  The committee fails to plead nonconclusory facts,

3    showing that the debtor exercised such consistent and total

4    control over the nondebtor entities that they lack separate

5    corporate existence.  Even accepting the committee's

6    allegations as true, the assertion that the debtor and the

7    nondebtor entities share a business address, office space, and

8    certain officers, directors, and employees does not, as a

9    matter of law, establish the level of domination or control

10   required to support an alter ego theory.  Again, under Unocal.

11   While the committee alleges that the bishop had authority to

12   approve certain expenditures and appoint staff, it does not

13   plead that this authority was actually and regularly exercised

14   in a way that would justify piercing the corporate veil.

15          The committee's allegations regarding financial

16   overlap between the debtor and nondebtor entities similarly

17   fail to plausibly establish the requisite unity of interest and

18   ownership necessary to pierce the corporate veil under an alter

19   ego theory.  The fact that the entities served as guarantors

20   for one another in loan and bond obligations without more

21   reflects ordinary commercial conduct, not patent abuse or

22   disregard of corporate formalities.  Such arrangements do not,

23   standing alone, demonstrate that the debtor and nondebtor

24   entities lack separate personalities or that their operations

25   were so entangled as to effectively merge them into a single

1    enterprise.  That's Bank of Montreal v. SK Foods LLC, 476 B.R.

2    588, Eastern District of California -- sorry, Bankruptcy Court

3    Eastern District of California (2012).

4            Finding that the capitalization of a guarantor LLC for

5    another corporate debtor's credit obligations was insufficient

6    to support an alter ego claim.  While the committee points to

7    certain facts suggesting informal practices or share financial

8    responsibilities, those allegations, again in the Court's mind,

9    do not rise to the level of pervasive control, pervasive

10   commingling, or disregard for corporate formalities sufficient

11   to support alter ego liability.

12           Secondly, I think the amended complaint fails to show

13   a resulting injustice from a failure to disregard the

14   defendant's corporate form.  The committee's assertion that

15   survivors will receive lower compensation absent consolidation,

16   while it may be true, does not satisfy the second prong of the

17   alter ego test, which requires a showing that maintaining

18   corporate separateness would sanction fraud or promote

19   injustice.  Again, Doe v. Unocal.

20           The committee contends that an unjust outcome will

21   result if the nondebtor entities' assets are not consolidated

22   into the estate, thereby limiting the funds available to

23   survivors.  However, courts have consistently held that the

24   inability to collect a judgment or access additional funds,

25   even if inequitable, does not by itself rise to the level of

Case: 24-04053    Doc# 58-1    Filed: 08/08/25    Entered: 08/08/25 14:34:20    Page 21
of 26

1    injustice required to pierce the corporate veil.  Again, Roman

2    Catholic Archbishop v. Superior Court.

3         California courts have historically held that in order

4    to rely on alter ego theories, it must be alleged that the

5    entities are the business conduits of one another and that to

6    recognize their separateness would aid in the consummation of a

7    wrong.  Meadows v. Emett & Chandler, 99 Cal.App.2d 496.  The

8    amended complaint, in the Court's view, fails to allege that

9    the debtor structured its financial relationship with the

10   nondebtor entities to aid in perpetrating fraud, deceiving

11   creditors, or otherwise abusing the corporate form.

12        At most, the committee alleges an unfortunate

13   consequence of preexisting lawful business arrangements.

14   Without more, the committee has not shown that respecting the

15   defendant's corporate separateness and the nondebtor separate

16   entities, would result in the type of fraud or injustice

17   necessary to satisfy the second prong of the alter ego

18   standard.

19        While alter ego liability is generally a highly

20   factual inquiry, it is not necessarily a matter that must be

21   fully tried.  Motul S.A. v. USA Wholesale Lubricant, Inc., 686

22   F.Supp.3d 900.  And that's an N.D. Cal. case from 2003.  "The

23   court concludes" -- quoting from that case, "The court

24   concludes that Motul has not alleged sufficient facts to

25   support its assertion that Mr. Fateh, USA Auto and the other

1  corporate defendants are each other's alter egos and has failed

2  to satisfy the first prong of the alter ego test."  So

3  therefore it's possible to dispose of these matters at the

4  pleading stage, although it may be less commonly done.

5      The amended complaint fails to allege facts

6  demonstrating the kind of sustained and systemic entanglement

7  through a unity of interest in ownership or otherwise, between

8  the debtor and the nondebtor entity, such that the alter ego

9  doctrine is -- that the alter ego doctrine is designed to

10  address.  It likewise fails to show that maintaining their

11  separate corporate forms would result in fraud or injustice.

12      The facts presented are essentially identical to the

13  committee's prior attempt to invoke substantive consolidation

14  through Section 105(a).  If anything, the alter ego standard is

15  frankly more demanding, requiring a more systemic and pervasive

16  melding of interest the Court doesn't believe are found here.

17  Accordingly, the committee has not alleged sufficient facts to

18  meet the requirements for piercing the corporate veil under an

19  alter ego theory and thus fails to satisfy the entanglement

20  prong of the substantive consolidation standard under

21  nonbankruptcy law.

22      Creditor expectation test.  In the motion to dismiss,

23  the debtor argues that the committee cannot rely on the

24  creditor expectation test and notwithstanding, fails to plead

25  sufficient facts to satisfy the test.  Citing a couple of cases

Case: 24-04053   Doc# 58-1   Filed: 08/08/25   Entered: 08/08/25 14:34:20   Page 23
of 26

1  from the Southern District of New York.  In re: Republic

2  Airways Holdings Inc., which is at 565 B.R. 710 (Bankr.

3  S.D.N.Y.), and Official Committee Of Unsecured Creditors of

4  Verestar, Inc. v. American Tower Corp., 343 B.R. 444 (Bankr.

5  S.D.N.Y 2016).

6          The debtor claims that the inquiry as to whether

7  creditors treated the debtor and other entities as one requires

8  reference to specific creditors that treated the entities as

9  one, which the committee has not demonstrated here.  The debtor

10  cites the committee's own use of the 2000 A series bond

11  documents in the 2017 credit agreement, not as evidence of

12  supposed entanglement, but as evidence that creditors and

13  lenders understood and recognized the separate nature of the

14  entities and requiring separate guarantees and separate

15  financial disclosures.

16          The debtor further argues that the committee may not

17  rely on the creditor expectation test, as it is grounded in the

18  bankruptcy court's equitable powers under Section 105 of the

19  Bankruptcy Code, and such reliance would run afoul of Section

20  303(a) and the Court's previous ruling on this issue.

21          The bottom line is I don't think that, even were I to

22  take the creditor expectation test as relevant here and

23  available after my prior ruling, I don't think the committee

24  has alleged facts that would implicate that test.

25          So lastly, the declaratory relief under Section 541,

Case: 24-04053   Doc# 58-1   Filed: 08/08/25   Entered: 08/08/25 14:34:20   Page 24
of 26

1  finally, the debtor argues that the requested declaratory

2  relief does not adequately state a claim, as 541 does not

3  create a separate cause of action, and this request is simply a

4  backdoor attempt to solve some consolidation.  The Court

5  agrees.  A complaint must set forth sufficient facts accepted

6  true to state a plausible legal basis for the relief sought.

7  While the amended complaint does provide some factual

8  allegations in support of its position, it fails to articulate

9  any cognizable legal theory or doctrinal framework under which

10  the property at issue could be deemed to be property of the

11  debtor's estate under 541 where invocation of declaratory

12  relief is insufficient absent supporting legal grounds that

13  would bring the disputed assets within the scope of estate

14  property.  As such, the claim for declaratory relief as pled

15  does not meet the pleading standard required to survive

16  dismissal under Rule 12(b)(6).

17          So I know that's a lengthy ruling, but I wanted to

18  give you guys the benefit of it.  Obviously, there's a

19  transcript available.

20          Mr. Manns, I see, is here, and I know Mr. Moses is

21  here.  If you folks want to prepare an order granting both

22  motions to dismiss and just for the reasons stated on the

23  record and indicate that the Court read an oral ruling into the

24  record, you can do so.

25          MR. MOSES:  Yes, Your Honor.  I do need to clarify.

Case: 24-04053   Doc# 58-1   Filed: 08/08/25   Entered: 08/08/25 14:34:20   Page 25
of 26

1   Is this with prejudice?

2          THE COURT:  I believe it is.  My sense of the --

3   including the dialog that we had last time with the committee

4   is that they were prepared to provide everything that they had

5   by way of factual background and support in this complaint, and

6   I'm going to take them at their word.  So they can certainly

7   challenge that on appeal, that it was wrongful to do this with

8   prejudice, but my sense is that we have exhausted -- we've

9   exhausted this vehicle, in my view, so it's with prejudice.

10   Okay.

11          MR. MOSES:  Just for the reasons on the record.  Thank

12   you.

13          THE COURT:  Okay.  No, thank you very much.

14          You guys have any more patience to talk?

15          MS. UETZ:  I have one more matter, Your Honor, if you

16   have --

17          THE COURT:  Oh, okay.  Because I was going to -- I

18   looked at the objection in the meantime, and I wanted to talk

19   with you about it.  Bo but raise the last matter.

20          MS. UETZ:  Thanks, Your Honor.  Uetz of Foley for the

21   debtor.  We filed this morning a motion for an extension of the

22   confirmation scheduling order.  We would request --

23          THE COURT:  I will admit, I haven't read it yet.

24          MS. UETZ:  Of course.

25          THE COURT:  Okay.